THE UNION CENTRAL LIFE INSURANCE COMPANY *vs.*
CLINTON COOLIDGE.

Worcester. April 9, 1970. — May 5, 1970.

Present: WILKINS, C.J., SPALDING, CUTTER, REARDON, & QUIRICO, JJ.

*Contract*, Construction, Of employment, Advance against earnings.

Respecting a contract between an insurance company and an agent employed to solicit the purchase of life insurance, providing that if the contract should be terminated and the agent should "become engaged . . . indirectly . . . in the writing of life insurance" for a competitor of the company any advances to the agent by the company, less certain credits, would become a debt due to the company payable immediately on demand, it was held that the agent, upon leaving the employment of the company, did not indirectly become engaged in the writing of life insurance for a competitor merely by being employed by the competitor as supervisor of the basic training program of all its new agents.

CONTRACT. Writ in the Superior Court dated September 1, 1965.

The action was heard by *Ponte*, J.

*William R. Whalon* for the defendant.

*Weld S. Henshaw* for the plaintiff.

CUTTER, J.   The facts stated below appear from the pleadings and answers to interrogatories.   A Superior Court judge on the insurance company's (Union) motion (see G. L. c. 231, § 59, as amended through St. 1965, c. 491, § 1), ordered judgment for Union of $2,752.55, with interest from December 28, 1964.   The case is before us on Coolidge's bill of exceptions.

Coolidge was employed by Union, as a licensed agent for it in Massachusetts, to solicit the purchase of life insurance. During 1964, Union advanced to Coolidge $3,620.55, under "a program of advances or a drawing account."   Each advance was governed by a contract signed by Coolidge in the following form: "The undersigned . . . agrees that if his contract with . . . [Union] shall be terminated for any reason and he shall become engaged *directly or indirectly*, within a period of two years from . . . such termination, *in the writing of life insurance* for any . . . corporation, in any state in which he was licensed to represent . . . Union . . . then, and in such event, all monies receipted for hereby, less any credits arising from the application of commissions and persistency allowances, shall become a debt due . . . from the undersigned to . . . [Union], which debt the undersigned agrees to pay immediately upon demand, . . . [with] interest at . . . (6%) from the date of said demand until paid" (emphasis supplied).

Coolidge left Union's employment on December 28, 1964. He has been employed since January, 1965, by another insurance company (State) in Massachusetts as supervisor of the basic training program of all its new financed agents.[1]

---

[1] His other present duties include "b. To correspond with the [m]anagers and [g]eneral [a]gents of the [c]ompany regarding the training of new [a]gents.   c. Review training material and training plans submitted by the [m]anagers.   d. Conduct meetings with [m]anagers and [a]ssistant [m]anagers explaining training procedures and material.   e. Coordinate, supervise and conduct training schools in the home office for selected groups of [a]gents. f. Assist in the preparation of training materials and procedures and communication of such materials to [f]ield [f]orces."

On December 28, 1964, Union made demand on Coolidge to return the net amount ($2,752.55) of the advances by Union to him above credits.

Coolidge has given up his license to sell insurance. He thus is clearly not directly engaged in the writing of life insurance. We must determine, however, whether training others to write life insurance for State is engaging indirectly in such writing.

The advance contract is clearly one required by Union as a condition precedent to its making advances. As such it is to be construed most strongly against Union. *Wright* v. *Commonwealth*, 351 Mass. 666, 673. The contract tends indirectly to restrain employment. Thus the scope of any such restraint should not be extended beyond that required by the language used by the parties. Express, clear language preventing all service for a "competitor" of Union (cf. *Flynn* v. *Murphy*, 350 Mass. 352, 353) could have dealt decisively with the subject. See *C. K. Smith & Co. Inc.* v. *Charest*, 348 Mass. 314, 318–319. Our usual rule, of course, does not require repayment of such advances in the absence of an express or implied agreement to do so. See *Pesanelli* v. *Lombardi*, 349 Mass. 250, 251.

We conclude that Coolidge is not engaged indirectly in the writing of life insurance. We interpret the somewhat ambiguous contract provision as referring to activity closely similar to that in the old employment to which the contract relates, which was actual solicitation of purchases of insurance. For example, we assume that the contract would require the refund of the advances to Coolidge, not only if he engaged directly in selling insurance, but also if he did so indirectly by supervising groups of salesmen (not mere trainees) or if he served as a sales manager. Coolidge's activities seem to us to be more those of a teacher than those of a seller of insurance. In any case, doubts concerning meaning are to be resolved against Union.

*Exceptions sustained.*