JOHN J. CHENEY vs. AUTOMATIC SPRINKLER
CORPORATION OF AMERICA.

Suffolk. October 2, 1978. — January 24, 1979.

Present: HENNESSEY, C.J., QUIRICO, BRAUCHER, WILKINS, & LIACOS, JJ.

Contract, Employment, Performance and breach, Forfeiture of de-
ferred compensation. Pleading, Civil, Complaint.

Even though a complaint by a plaintiff in an action to recover from
    his employer direct incentive payments and bonuses under a com-
    pensation agreement which provided that deferred compensation
    payments would not be made to "[o]ne who . . . joins a competitor"
    did not state a claim on which relief could be granted, this court
    afforded the plaintiff an opportunity to amend his complaint to
    allege that the defendant acted in bad faith in denying payments
    to the plaintiff or that the provision denying benefits if the plaintiff
    went to work for a competitor was an unreasonable restraint where
    the court indicated for the first time the relevant considerations
    concerning the enforcement of a forfeiture for competition clause.
    [142-150]

CIVIL ACTION commenced in the Superior Court on Feb-
ruary 19, 1976.

A motion to dismiss was allowed by Byron, J., a District
Court judge sitting under statutory authority.

After review was sought in the Appeals Court, the Su-
preme Judicial Court, on its own initiative, ordered direct
appellate review.

Martin W. Fisher for the plaintiff.
Joseph H. Walsh for the defendant.

WILKINS, J. The plaintiff, a former salesman, district
manager, and regional vice president of the defendant
corporation, brought this action to recover direct incen-
tive payments and bonuses to which he claims entitle-
ment under the defendant's compensation agreements

with him. The defendant filed a motion to dismiss under
Mass. R. Civ. P. 12(b)(6), 365 Mass. 754 (1974), and, alter-
natively, presented a motion for a more definite state-
ment under Mass. R. Civ. P. 12(e), 365 Mass. 754 (1974).
A judge of the Superior Court allowed the motion for a
more definite statement and took no action on the motion
to dismiss. After the plaintiff filed a more definite state-
ment, another judge allowed the defendant's motion to
dismiss. We transferred the plaintiff's appeal to this
court. We conclude that the plaintiff should have the
opportunity to amend his complaint in light of the princi-
ples of law considered in this opinion.

The allegations of the complaint and of the more defi-
nite statement are as follows. The plaintiff worked for the
defendant from November, 1956, until June, 1972. He
started as a salesman, became a district manager in 1966,
and later became the eastern regional vice president, re-
sponsible for the northeastern United States. Each year
he signed a contract of employment in Massachusetts. A
copy of the form of agreement executed by the plaintiff
for the year 1966, when he was promoted to district
manager, is annexed to the complaint. We infer that the
language of the annexed agreement was in effect during
each subsequent year of the plaintiff's employment, al-
though the annexed agreement is limited to one year and
apparently applies only to district managers.

The defendant's compensation plan for district manag-
ers supervising other salesmen provides three types of
compensation: a base salary, a direct incentive payment
based on a certain percentage of the annual operating
profit of the employee's district, and a discretionary
bonus. The agreement noted that direct incentive pay-
ments and discretionary bonuses presented "by far, the
greatest opportunity for enhanced earnings." Any direct
incentive payment for one year would be paid to the em-
ployee during the first quarter of the next year up to an
amount equal to 50% of the employee's base salary. Any
remaining unpaid direct incentive payment would be

paid in equal amounts during the first quarter of each of the next four years. The amount of any bonus was to be determined by a compensation committee and paid from a bonus fund established annually by the defendant's board of directors. One-fourth of any year's bonus was to be paid to the employee during the first quarter of each of the succeeding four years.

The agreement provided that the award of any direct incentive payment or of any bonus was wholly discretionary with the defendant.[1] Any employee who dies, retires, or leaves the defendant "with the approval of the [directors is to] receive all direct incentive and bonus installments as described above." However, "[o]ne who is discharged for cause, terminates his employment, joins a competitor, or engages in activities which are harmful to the Corporation, will forfeit all installments which remain unpaid on the date of the occurrence of any of such events. However, final authority over the payment or forfeiture of direct incentive and bonus installments will be vested in the Compensation Committee." The defendant reserved the right to change or terminate the plan and to make final and binding decisions concerning the

---

[1] The fourth paragraph of the agreement reads as follows:

"4. *Discretionary Nature of Direct Incentive and Bonus*

The award or payment of any direct incentive or bonus is entirely within the discretion of the Corporation and nothing contained herein will be construed to the contrary. Neither the award nor payment of any direct incentive or bonus is a condition of employment, and no person will be deemed to have earned or acquired any right thereto at any time prior to actual receipt of payment.

"One who dies, retires, or leaves the Corporation with the approval of the Board of Directors will receive all direct incentive and bonus installments as described above. One who is discharged for cause, terminates his employment, joins a competitor, or engages in activities which are harmful to the Corporation, will forfeit all installments which remain unpaid on the date of the occurrence of any of such events. However, final authority over the payment or forfeiture of direct incentive and bonus installments will be vested in the Compensation Committee."

interpretation and administration of the plan.[2]

The defendant discontinued all direct incentive and installment payments when the plaintiff left its employment. The plaintiff claims that he is entitled to (a) $34,-800 in unpaid direct incentive installments attributable to the years 1968 through 1971, and (b) $14,000 in unpaid bonus installments for the years 1968 through 1971.[3] In his brief, but nowhere in his pleadings, the plaintiff represents that he resigned to form a competing corporation, and that the defendant was aware of this when it accepted the plaintiff's resignation. It makes no sense for us to consider the plaintiff's pleadings apart from his representation that he had formed a competing corporation, and, therefore, we will treat the pleadings as if they alleged that fact.

From a literal reading of the plaintiff's compensation agreement, it is clear that he had no explicit right to unpaid incentive and bonus installments when he left the defendant's employ and went to work for a competitor. If the agreement presented an ambiguity, we would construe it in favor of the plaintiff because it tends indirectly to restrain employment. See *Union Cent. Life Ins. Co.* v. *Coolidge*, 357 Mass. 457, 459 (1970). However, we see no basis for interpreting the agreement as giving the plaintiff any rights in the circumstances. The agreement was not without consideration, nor was it illusory. If, for ex-

[2] Paragraph 7 of the agreement provides (in part) as follows:

"7. *Reservations of the Corporation*

The Corporation reserves the right to change, modify, or amend this plan in order to correct inequities which may develop in the administration of the plan, or for any other reason. The Corporation also reserves the right upon 30 days written notice to terminate the plan with respect to any or all individuals who are or might be recipients thereunder. The Compensation Committee of the Board will have the authority to construe, interpret and administer the plan and its decisions will be final and binding on all employees."

[3] It would appear that any bonus attributable to the year 1968 should have been paid in full by the time of the plaintiff's resignation in June, 1972.

ample, an employee had died while still employed by the defendant, we would construe the agreement as assuring the payment of all installments then unpaid. The question is whether there is any theory under which, in the circumstances, the discretionary provisions of the agreement should not be enforced.

Our previous decisions have upheld agreements which have provided for the loss of unpaid compensation if a former employee went to work for a competitor. See *Flynn* v. *Murphy,* 350 Mass. 352 (1966) (interest in profit sharing fund lost where former employee went to work for a competitor although not engaged in competing work); *Chase* v. *New York Life Ins. Co.,* 188 Mass. 271, 273 (1905) (renewal premiums lost by former employee who went to work for a competitor). See also *Union Cent. Life Ins. Co* v. *Coolidge,* 357 Mass. 457, 459 (1970), where the principle was recognized as valid, but inapplicable under the agreement as construed.

Our opinions have not assessed the right of a former employee to unpaid compensation in terms of the reasonableness of the indirect restraint on the employee's seeking other employment. Apart from statutory limitations, the majority view in this country seems to be that a forfeiture for competition clause in an employment agreement is enforceable without regard to the reasonableness of the restraint on the former employee. See, e.g., *Woodward* v. *Cadillac Overall Supply Co.,* 396 Mich. 379, 383-384 (1976) (three to two plurality) (noncontributory pension plan);[4] *Rochester Corp.* v. *Rochester,* 450 F.2d 118, 122-123 (4th Cir. 1971) (Virginia law) (noncontributory pension plan), and cases cited.[5] See generally Annot., 18 A. L. R. 3d 1246

---

[4] This case has a strong dissent contending for a rule that a forfeiture clause in a retirement profit-sharing agreement, which was not the product of balanced bargaining power, is void where there are no limitations concerning competition in time and area. *Woodward* v. *Cadillac Overall Supply Co.,* 396 Mich. 379, 384-407 (1976) (Williams, J., dissenting).

[5] The plaintiff makes no claim based on any statute. After the events involved in this case, regulatory legislation was enacted requiring vest-

(1968); Annot., 81 A. L. R. 2d 1066 (1962). Some courts, however, have treated unreasonably broad forfeiture clauses as invalid and not subject to judicial modification to reasonable limits. See, e.g., *Almers* v. *South Carolina Nat'l Bank*, 265 S.C. 48, 56 (1975) (forfeiture clause in noncontributory pension plan invalid unless it contains reasonable time and geographic limitations); *Union Cent. Life Ins. Co.* v. *Balistrieri*, 19 Wis. 2d 265, 270-271 (1963) (terms of the agreement unenforceable unless they are reasonable in time and place). Cf. *Muggill* v. *Reuben H. Donnelley Corp.*, 62 Cal. 2d 239, 242-243 (1965) (construing a statutory prohibition against contracts restraining people from engaging in a lawful profession, trade, or business).

Other courts have taken an intermediate ground and have assessed the facts of a particular forfeiture to determine whether it is reasonable. See, e.g., *Food Fair Stores, Inc.* v. *Greeley*, 264 Md. 105, 116-119 (1972) (forfeiture of rights under pension plan an invalid restraint where former employee's work for an indirect competitor created little, if any, hardship to his former employer); *Lavey* v. *Edwards*, 264 Or. 331, 337-340 (1973) (test of reasonableness as to forfeiture provision in profit-sharing retirement plan); *Sheppard* v. *Blackstock Lumber Co.*, 85 Wash. 2d 929, 933 (1975) (burden of proving reasonableness of forfeiture on the employer); *Neuffer* v. *Bakery & Confectionery Workers Int'l Union*, 307 F. 2d 671, 673 (D.C. Cir. 1962) (forfeiture of pension rights by retired employee who sponsored a rival union, a reasonable condition and not against public policy). Cf. *Briggs* v. *R. R. Donnelley &*

ing of certain rights in pension plans and in certain other plans. See G. L. c. 151D, § 13, inserted by St. 1973, c. 1169, § 1, as amended by St. 1974, c. 641, § 17, effective January 1, 1980 (St. 1973, c. 1169, § 2); Employee Retirement Income Security Act of 1974, § 203(a), 29 U.S.C. § 1053(a) (1976) (impliedly barring forfeiture of specified benefits if an employee goes to work for a competitor). See generally *Riley* v. *MEBA Pension Trust*, 570 F. 2d 406, 408-409 (2d Cir. 1977).

*Sons Co.*, 589 F.2d 39, 41 (1st Cir. 1978) (Illinois law) (forfeiture clause in deferred compensation, plan voluntarily joined by employee, now working for competitor, is a reasonable restraint in the circumstances).[6]

We reject the suggestion that an employee in a case such as this has made an agreement to which he must be held in all instances. Agreements of the character involved here often are not arrived at by bargaining between equals. The employer normally presents the terms on a "take it or leave it" basis. This is particularly true where, as here, an annual agreement is presented to an employee whose options are to sign or to terminate his employment. We have not automatically held a former employee to the terms of his covenant not to compete. A test of reasonableness, based on the circumstances of the parties and the public interest, has been traditional in our cases involving covenants not to compete. We have enforced the covenants only to the extent that the restraint is reasonable in time and place and necessary to protect the former employer's trade secrets, confidential information, or good will. See *New England Canteen Serv., Inc.* v. *Ashley*, 372 Mass. 671, 674 (1977), and cases cited. We see no reason not to enforce a forfeiture clause to the extent that it serves an appropriate interest of the former employer and is otherwise reasonable. Just as we have cut back on overbroad terms of a covenant not to compete (see *All Stainless, Inc.* v. *Colby*, 364 Mass. 773, 777 [1974]), we would enforce a forfeiture of deferred compensation only to the extent the restraint is reasonable.[7]

---

[6] The use of a reasonableness test is advocated by most commentators who have considered what principles appropriately should be applied. See Goldschmid, Antitrust's Neglected Stepchild: A Proposal for Dealing with Restrictive Covenants under Federal Law, 73 Colum. L. Rev. 1193, 1199 (1973); Koehn & Ptacek, Employer Protection Against Loss of the Key Employee, 57 Iowa L. Rev. 75, 88-89 (1971); Comment, Forfeiture of Pension Benefits for Violation of Covenants Not to Compete, 61 Nw. U. L. Rev. 290, 299 (1966). See generally 6A. A. Corbin, Contracts § 396 (1962); 14 S. Williston, Contracts § 1643, at 157 (3d ed. 1972).

[7] It has been suggested that an overbroad forfeiture for competition provision should not be cut back to reasonable limits and then en-

A number of considerations are appropriate in determining the reasonableness of a provision forfeiting post-termination financial benefits. The amount and nature of the forfeiture and the nature of the employee's duties and responsibilities in his former and current employment are important. If the former employee is not working in circumstances in which a covenant not to compete would be enforceable, the burden of justification of the forfeiture becomes particularly onerous on the former employer. In such a case, the former employee's loss may assume the character of a forfeiture in the classical sense. We do not discount, however, the possibility that a financial inducement to an employee, especially a key employee, to continue to work for his employer might be reasonable in particular instances.[8] Even if the former employee is working in circumstances in which a covenant not to compete would be enforceable, the reasonableness of the employee's loss must still be weighed, and, in an appropriate case, it might be modified to a reasonable level.

The notion is not new that an employer may not be entitled to rely on the express terms of its agreement with an employee so as to avoid the payment of compensation attributable to past services. For example, we have re-

---

forced. *Woodward* v. *Cadillac Overall Supply Co.*, 396 Mich. 379, 397-403 (1976) (Williams, J., dissenting). We, however, have been willing to reconstruct the limits of a covenant not to compete and see no reason to treat differently a forfeiture for competition clause. Each can have an inhibitory effect on present and former employees, in much the same way, but neither by itself is a less acceptable form of restraint than the other. If forfeiture for competition provisions were enforced without regard to the reasonableness of their terms while covenants not to compete were subjected to such a test, overreaching employers would be tempted to rely on the threat of forfeiture as a means of restraining employees from seeking employment with competitors.

    [8] Of course, the careful negotiation of an agreement, particularly an initial agreement, expressing such an interest on the employer's part would do much to support the enforceability of a forfeiture.

cently held that an employer may not in bad faith discharge an employee, employed at will, so as to prevent the employee from earning commissions which would have been payable in the normal course. *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 105 (1977). There is no suggestion of bad faith by the defendant in this case.

We consider the plaintiff's allegations in light of these principles and in conjunction with his concession that he has formed a competing corporation. Count 1 claims a right to recover under the provisions of the contract. However, the plaintiff has no absolute right to incentive and bonus payments under the terms of the contract when he has gone to work for a competitor. Even reading the complaint sympathetically (see *Charbonnier* v. *Amico*, 367 Mass. 146, 152-154 [1975]), we find no allegation, or even a hint, of facts that would justify relief; that is, facts that suggest that the enforcement of the terms of the agreement would be unreasonable in the circumstances. The plaintiff does say in his more definite statement that the restrictions violate Massachusetts law because they do "not specify the scope of the restrictions as to time and place and specificity," and the fifth count alleges that the forfeiture provisions are unenforceable as an unreasonable restriction against competition. Our cases, however, have not automatically invalidated covenants not to compete where they did not express appropriate limitations, and, as we have said, the same principle applies to forfeiture for competition provisions.

The other counts of the complaint considered with the more definite statement fare no better. The second count alleges that the compensation plan is an illusory contract; the third count alleges that the plan is an adhesion contract and the forfeiture unconscionable and therefore unenforceable; and the fourth count alleges that the forfeiture is an unenforceable penalty clause. None of these conclusory allegations is supported by a reference to facts which would warrant the legal consequences asserted. The plaintiff has not cited supporting authority, concern-

ing the purported denial of deferred compensation, in which any of these theories have been accepted as automatically justifying the overriding of the terms of such an agreement.

In the absence of allegations of fact indicating (a) that the defendant acted in bad faith in denying further payments to the plaintiff or (b) that the provision denying benefits if the plaintiff went to work for a competitor was an unreasonable restraint on the plaintiff, the complaint and the more definite statement fail to allege a claim on which relief can be granted. In the circumstances, however, particularly because of our indication for the first time of the relevant considerations concerning the enforcement of a forfeiture for competition clause, we believe that the plaintiff should be given an opportunity to amend his complaint.[9]

The judgment dismissing the complaint shall be reversed, and the plaintiff will have leave to file an amended complaint within forty days of the date of the rescript.

*So ordered.*

---

[9] The plaintiff had been employed in key sales positions for the defendant, ending his employment in a position having responsibility for a wide geographical area. These circumstances tend to justify restraints on the plaintiff's assumption of competing employment, and they also may have given rise to a legitimate interest in encouraging the plaintiff to continue in the defendant's employ. The defendant may be able to demonstrate that the loss of compensation was reasonable in these circumstances and far less restrictive than a covenant not to compete which would have been enforceable had it been in the agreement. We are not prepared to say that every deferred compensation arrangement is unlawful when it makes the right to receive that compensation dependent on continued employment. If a former employer may reasonably deny such compensation, we see no reason why it may not reserve the right in its discretion to make such payments, in spite of the employee's termination of his employment. Good faith, however, must guide the employer's exercise of its discretion. See *Fortune* v. *National Cash Register Co.*, 373 Mass. 96, 102 (1977).