HARRY C. STRUCK *vs.* PLYMOUTH MORTGAGE CO.

Plymouth. November 3, 1992. - January 8, 1993.

Present: LIACOS, C.J., WILKINS, NOLAN, LYNCH, & GREANEY, JJ.

*Contract*, Employment, Performance and breach.

A written compensation agreement for employment at will, providing that
no compensation would be paid for particular past services if employ-
ment were terminated, was enforceable in the circumstances, and the
employer was entitled to withhold commissions on transactions initiated
by its employee but completed after the employee had voluntarily left
his employment. [120-122]

CIVIL ACTION commenced in the Superior Court Depart-
ment on September 4, 1987.

The case was heard by *Chris Byron*, J.

The Supreme Judicial Court on its own initiative trans-
ferred the case from the Appeals Court.

*Jeffrey H. Gladstone* for the defendant.

*Paul F. Lorincz* for the plaintiff.

WILKINS, J. We consider again the right of a former at-
will employee to compensation for particular past services
where his compensation agreement provided that no compen-
sation would be paid for those services if the employment
were terminated. The employee, unhappy with his employer's
unilateral reduction in his commission rates, voluntarily left
his job and went into competition with his former employer.
In the circumstances of this case, we conclude that the agree-
ment is enforceable and that the employer was entitled to
withhold commissions on transactions initiated by the em-
ployee but completed after the employee resigned.

We set forth the trial judge's unchallenged findings of fact.
In November, 1985, the plaintiff Struck, who testified that
he had had no substantial previous experience in the field,

began his employment with the defendant (Plymouth) as its only residential mortgage officer in a geographical area in which Plymouth had not previously operated. His principal duty was to originate residential mortgage loans. Struck would find a prospective borrower, would assist that person in the preparation of a loan application form, and would submit the form to one of Plymouth's loan processors. If the application form was diligently prepared, Plymouth would not call on Struck to perform any additional task in connection with either the processing of the loan application or the closing of any approved loan. After a twelve-week training period during which he received a salary, Struck's compensation (apart from fringe benefits) was based on commissions earned on closed residential mortgage loans. At the time of Struck's initial employment, there was nothing said or written regarding whether a commission would or would not be paid if Struck's employment terminated and thereafter a Struck-initiated mortgage transaction were completed. Struck was very successful in finding satisfactory mortgage applicants and became Plymouth's most productive mortgage loan officer.

In April, 1986, Plymouth insisted, as a condition of their continued employment, that Struck and other residential mortgage loan officers sign an employment agreement. That agreement set forth the commission rates that Plymouth would pay, stated that either party could terminate the agreement at any time with or without cause, and provided that, if, "for any reason," employment terminated, "no commissions will be paid on any originated or closed loans subsequent to the date of termination." Struck, who had potential commissions of $50,000 on transactions being processed through the system, signed the agreement after objecting to its terms. Struck testified that in his last year of employment by Plymouth he received approximately $90,000 in commissions. He also received a monthly automobile allowance, health insurance, and $75,000 in life insurance coverage.

In late March, 1987, Plymouth unilaterally reduced certain commissions it would pay Struck and others. Struck, un-

happy with the change, decided to terminate his employment. He formed a corporation in April, 1987, but did not actively compete with Plymouth or undermine its good will. On May 14, 1987, Struck resigned and entered into competition with Plymouth by seeking mortgage loan applicants in the same geographical area where he had worked for Plymouth. Plymouth closed thirty-seven Struck-initiated loan applications that had been outstanding on the date of Struck's resignation. In closing these loans, Plymouth performed no work that Struck would have performed had he remained with Plymouth. If Struck had remained in Plymouth's employ, he would have been entitled to approximately $14,000 in commissions on those thirty-seven closed transactions.

The trial judge ruled that Struck was entitled to be paid the fair value of his services, an amount which the judge determined was equal to the amount of the lost commissions. The judge cited no authority for his ruling. He observed that the literal application of the challenged provision could produce harsh results. He mentioned the loss of commissions if an employee were to die, if an employee left to enter a noncompetitive field, or if an employee were fired without cause. These results, the judge said, would be unconscionable. He did not rule, however, that the result in Struck's case would be unconscionable. He simply ruled, without explanation, that Struck was entitled to the fair value of his services.[1]

We transferred Plymouth's appeal to this court. We reverse the judgment.

This is not a case in which an employer terminated an employee in bad faith in order to keep for itself compensation, payable but not yet due, for the employee's past services. See *Fortune* v. *National Cash Register Co.*, 373 Mass. 96 (1977). Here the at-will employee left his employment voluntarily. The question is whether, as a matter of policy, this court will decline to enforce that provision in the compensa-

---

[1]The fact that the challenged provision would be unenforceable in situations not present in Struck's circumstances does not aid Struck, and he does not argue that it does.

tion agreement which denies Struck the right to commissions on future closings of loans that he had initiated. This kind of issue is heavily fact-oriented and is to be answered by our determining whether Struck has shown, not that the denial of compensation would be unconscionable, but rather that it would be unreasonable in the circumstances. See *Cheney* v. *Automatic Sprinkler Corp. of Am.*, 377 Mass. 141, 147, 150 (1979).[2]

Application of the challenged provision to Struck is not unreasonable.[3] First, the threat of a loss of commissions on transactions in process tended to encourage residential mortgage officers to continue their employment with Plymouth. Struck was Plymouth's most productive loan officer and the only loan officer in the area he served. If a mortgage loan officer left, Plymouth would have to find and train a replacement, who would presumably be paid a salary initially (just as Struck was when he began work for Plymouth). Second, and more important, is the fact that Struck went into competition with Plymouth. Struck was not subject to a noncompetition agreement. The loss of compensation in the amount of some $14,000 served as an alternative, although a less onerous one, to a covenant not to compete with Plymouth. See

---

[2]We need not deal with any question of unconscionability. That concept concerns circumstances at the time the bargain was entered into. *Zapatha* v. *Dairy Mart, Inc.*, 381 Mass. 284, 291 (1980). Struck makes no reasoned argument, based on cases concerned with unconscionability, that the provision for his loss of future commissions was unconscionable when he signed his agreement with Plymouth. Even if unconscionability were involved, in these circumstances we would limit the application of any unconscionable clause so as to avoid any unconscionable result. See G. L. c. 106, § 2-302 (1) (1990 ed.); Restatement (Second) of Contracts § 208 (1981). Our application of a reasonableness. test to the enforceability of the agreement satisfies that standard.

[3]We shall treat this case as similar to one involving the denial of commissions on transactions already completed where the amount of the commissions was known at the time employment terminated. Cf. *Gram* v. *Liberty Mut. Ins. Co.*, 384 Mass. 659, 671-672 (1981). Actually, the commissions that Struck seeks were not due and payable at the time he resigned. They were contingent on the various loan transactions being completed.

*Cheney* v. *Automatic Sprinkler Corp. of Am.*, *supra* at 150 n.9.

It is not unreasonable to enforce a forfeiture of future compensation for past services in this case where Struck, who learned his trade while employed by Plymouth, immediately entered into competition with Plymouth. It is not unreasonable in effect to oblige Struck to surrender to Plymouth a relatively small portion ($14,000) of what his annual compensation had been ($90,000 plus benefits) in exchange for the privilege of immediately becoming Plymouth's direct competitor in the geographical area where Struck had worked for Plymouth and had developed business contacts while an employee of Plymouth.[4] We are enforcing the agreement to the extent it is reasonable just as we have enforced the terms of a noncompetition agreement to the extent that it is reasonable in time, location, and other respects. See *All Stainless, Inc.* v. *Colby*, 364 Mass. 773, 778 (1974). We express no opinion whether this agreement would be enforceable according to its terms if an employee were to resign but not enter into competition with Plymouth.

The judgment is reversed. Judgment shall be entered for the defendant Plymouth Mortgage Co.

*So ordered.*

---

[4]There is no merit to Struck's arguments that the challenged provision is unenforceable because, as he claims, the compensation agreement lacked consideration (see *Gebhard* v. *Royce Aluminum Corp.*, 296 F.2d 17 [1st Cir. 1961]) and is illusory.