46                              446 Mass. 46 (2006)

Boston Police Patrolmen's Association, Inc. *v.* Police Department of Boston.

BOSTON POLICE PATROLMEN'S ASSOCIATION, INC. *VS.* POLICE
DEPARTMENT OF BOSTON & others.[1]

Suffolk. December 9, 2005. - February 8, 2006.

Present: MARSHALL, C.J., GREANEY, IRELAND, SPINA, COWIN, & CORDY, JJ.

*Injunction,* Superior Court. *Practice, Civil,* Injunctive relief. *Motor Vehicle,*
Citation for violation of motor vehicle law. *Police Officer. Identification.*
*Statute,* Construction.

Discussion of the standard of review of an allowance or denial of a preliminary
injunction. [49-50]
A Superior Court judge properly denied the motion of the plaintiff union seek-
ing to enjoin the defendant city and its police department from collecting
officer identification numbers as part of data collection set forth under St.
2000, c. 228, § 10, where the union could not prevail on the merits. [50-52]

CIVIL ACTION commenced in the Superior Court Department on
August 29, 2005.

A motion for a preliminary injunction was heard by *Thomas
A. Connors*, J.

The Supreme Judicial Court on its own initiative transferred
the case from the Appeals Court.

*Bryan C. Decker* (*John M. Becker* with him) for the plaintiff.

*Amy E. Ambarik* for police department of Boston.

*Susan M. Prosnitz* (*Christopher Pohl* with her) for Secretary
of Public Safety.

The following submitted briefs for amici curiae:

*Cristina Beamud* for Massachusetts Major City Chiefs of
Police.

*John M. Collins* for Massachusetts Chiefs of Police Associa-
tion, Inc.

*John Reinstein & Barbara J. Dougan* for American Civil
Liberties Union of Massachusetts & others.

[1]The city of Boston and the Secretary of Public Safety.

IRELAND, J. The plaintiff union filed a motion for a preliminary injunction in the Superior Court, seeking to enjoin the city of Boston and its police department (city) from collecting officer identification numbers as part of data collection set forth under St. 2000, c. 228, "An Act providing for the collection of data relative to traffic stops" (Act). A Superior Court judge denied the motion for preliminary injunction. The union sought relief and filed a motion for a stay with a single justice of the Appeals Court. The single justice stayed the collection of officer identification information pending the appeal. We transferred the case to this court on our own motion. Because we conclude that officer identification is required by § 10 of the Act, we vacate the single justice's stay order and affirm the order of the Superior Court, denying the preliminary injunction.

*Background.* We take the facts as found by the judge in his memorandum of decision supplemented by undisputed facts in the record. In 2000, the Massachusetts Legislature approved the Act with the purpose of "ensur[ing] that adequate efforts are being made to identify and eliminate any instances of racial and gender profiling by police officers in the performance of their official duties."[2] The Act sets forth a two-part data collection

---

[2]Portions of the Act relevant to the request for a preliminary injunction are as follows:

"*Section 2.* The executive office of public safety shall work with the department of state police and municipal police departments to ensure that adequate efforts are being made to identify and eliminate any instances of racial and gender profiling by police officers in the performance of their official duties.

" . . .

"*Section 8.* The registry of motor vehicles shall collect data from any issued Massachusetts Uniform Citation regarding the following information: (1) identifying characteristics of the individuals who receive a warning or citation or who are arrested, including the race and gender of the individual; (2) the traffic infraction; (3) whether a search was initiated as a result of the stop; and (4) whether the stop resulted in a warning, citation or arrest. The registry of motor vehicles shall maintain statistical information on the data required by this section and shall report that information monthly to the secretary of public safety, who shall determine when it is also appropriate to transmit such data to the attorney general. The data collection shall commence not later than

procedure.[3] As part of the first phase, the registry of motor vehicles collected data identified in § 8 of the Act from any Massachusetts uniform citation issued during a traffic stop. Pursuant to § 10 of the Act, the registry of motor vehicles then transmitted the collected data to the Secretary of Public Safety for transmission to Northeastern University for analysis.[4] Based on its analysis, Northeastern University issued a report on May 4, 2004, finding that 249 of 366 Massachusetts law enforcement agencies appeared to have engaged in racial or gender profiling, including the city.

The second phase of data collection, pursuant to § 10 of the Act, requires those cities identified by the report as "appear-[ing] to have engaged in racial or gender profiling" to collect data on all traffic stops for one year, including those stops that did not result in a warning, citation, or arrest. Section 10 also

January 1, 2001.

"*Section 9.* Individual data acquired under this section shall be used only for statistical purposes and may not contain information that may reveal the identity of any individual who is stopped or any law enforcement officer.

"*Section 10.* Not later than one year after the effective date of this act, the secretary of public safety shall transmit the necessary data collected by the registry of motor vehicles to a university in the commonwealth with experience in the analysis of such data, for annual preparation of an analysis and report of its findings. The secretary shall forthwith transmit the university's annual report to the department of the attorney general, the department of state police, the Massachusetts Chiefs of Police Association, the executive office of public safety and the clerks of the house of representatives and the senate. The executive office of public safety shall, in consultation with the attorney general, if such data suggest that a state police barracks or municipal police department appears to have engaged in racial or gender profiling, require said state police barracks or municipality for a period of one year to collect information on all traffic stops, including those not resulting in a warning, citation or arrest. This information shall include the reason for the stop in addition to the other information already required under the Massachusetts Uniform Citation. Upon appeal by the colonel of state police or the municipality, respectively, the attorney general may determine that collecting such information is not required."

[3] We note that both the union and the city refer to the data collection as a two-phase process in their briefs.

[4] While the data submitted to Northeastern University did not contain officer identification information, the Massachusetts uniform citations from which the data were obtained did contain an officer identification field.

requires including data on why the stop was made and "the other information already required under the Massachusetts Uniform Citation." The Massachusetts uniform citation form requires the inclusion of officer identification information.

To facilitate the collection of data required by § 10, the Executive Office of Public Safety developed the Massachusetts traffic stop data collection form in 2005. The form included, inter alia, an officer identification field, in order "to allow managers to view data at the officer level," and for ease in "managing officers" and "dealing with wrongful accusations." The defendant police department mandated that all fields of the form be completed, including the officer identification field. The union, opposing the requirement that officers be identified, filed its request for injunctive relief.

*Discussion.* 1. *Standard of review.* In reviewing a judge's allowance or denial of a preliminary injunction, "[w]e decide whether the judge applied proper legal standards and whether there was reasonable support for his evaluation of the factual questions." *Hull Mun. Lighting Plant* v. *Massachusetts Mun. Wholesale Elec. Co.*, 399 Mass. 640, 642 (1987). Where there is no dispute regarding the facts of the case and no credibility determinations on which we would defer to the judge, we draw our own conclusions from the evidence in the record. *Siemens Bldg. Techs., Inc.* v. *Division of Capital Asset Mgt.*, 439 Mass. 759, 762 (2003).

The question before us is whether the Superior Court judge correctly determined that the union was not entitled to a preliminary injunction. In order for a preliminary injunction to issue, the moving party must show:

> " '(1) a likelihood of success on the merits; (2) that irreparable harm will result from denial of the injunction; and (3) that, in light of the [moving party's] likelihood of success on the merits, the risk of irreparable harm to the [moving party] outweighs the potential harm to the [nonmoving party] in granting the injunction.' *Tri-Nel Mgt., Inc.* v. *Board of Health of Barnstable*, [433 Mass. 217, 219 (2001)]. When a party seeks to enjoin governmental action, a judge is also 'required to determine that the requested order promotes the public interest, or, alternatively, that the equi-

table relief will not adversely affect the public.' *Commonwealth* v. *Mass. CRINC,* [392 Mass. 79, 89 (1984)]."

*Loyal Order of Moose, Inc., Yarmouth Lodge # 2270* v. *Board of Health of Yarmouth,* 439 Mass. 597, 601 (2003), quoting *Tri-Nel Mgt., Inc.* v. *Board of Health of Barnstable, supra* at 219. Here, we agree with the Superior Court judge that a plain reading of the Act fails to support the union's arguments in support of its motion for preliminary injunction because the union cannot prevail on the merits.

2. *St. 2000, c. 228.* A basic tenet of statutory construction requires that a statute "be construed 'so that effect is given to all its provisions, so that no part will be inoperative or superfluous.' " *Bankers Life & Cas. Co.* v. *Commissioner of Ins.,* 427 Mass. 136, 140 (1998), quoting 2A B. Singer, Sutherland Statutory Construction § 46.06 (5th ed. 1992). The words of the statute "should be read as a whole to produce an internal consistency." *Commonwealth* v. *Fall River Motor Sales, Inc.,* 409 Mass. 302, 316 (1991). In addition, it is "not proper to confine interpretation to the one section to be construed." 2A N.J. Singer, Sutherland Statutory Construction § 46.05, at 154 (6th ed. 2000).

If a court concludes that "the general meaning and object of the statute should be found inconsistent with the literal import of any particular clause or section, such clause or section must, if possible, be construed according to the spirit of the act." *Saccone* v. *State Ethics Comm'n,* 395 Mass. 326, 334 (1985), quoting *Holbrook* v. *Holbrook,* 1 Pick. 248, 250 (1823). Furthermore, in determining the legislative intent, an appellate court should construe the statute as a whole, to ensure that the statute serves its intended purpose. *Bartlett* v. *Greyhound Real Estate Fin. Co.,* 41 Mass. App. Ct. 282, 286 (1996). The court must also keep the legislation "in harmony with common sense and sound reason." *Atlas Distrib. Co.* v. *Alcoholic Beverages Control Comm'n,* 354 Mass. 408, 414 (1968), quoting *Morrison* v. *Selectmen of Weymouth,* 279 Mass. 486, 492 (1932).

The union first contends that the collection of an officer's identifying information is a violation of § 9 of the Act, which states:

"Individual data acquired under this section shall be

used only for statistical purposes and may not contain information that may reveal the identity of any individual who is stopped or any law enforcement officer."

The union argues that the words, "under this section," should be read as applying to the entirety of the Act, thus preventing any identifying information from being collected in both phases of data collection. We disagree. The language of the statute demonstrates that the words "under this section" contained in § 9 refers to § 8 of the Act. As the judge noted in his decision, the language makes clear that the Legislature distinguished whether a particular provision applies to the entire Act or just to a particular section of the Act. Compare § 1 (meaning of "racial and gender profiling" as "used in this act") and § 10 ("Not later than one year after the effective date of this act . . .") with § 8 (registry of motor vehicles shall maintain statistics on data "required by this section") and § 9 (data "acquired under this section"). See *Beeler v. Downey*, 387 Mass. 609, 616 (1982) ("where the Legislature has employed specific language in one paragraph, but not in another, the language should not be implied where it is not present"). See generally *Commonwealth v. Galvin*, 388 Mass. 326 (1983). Thus, the absence of any reference in § 9 to "the Act" supports a construction that the prohibition on collecting officer identification data applies to only part of the Act, not its entirety.

Moreover, § 9's reference to "data acquired under this section for statistical purposes" makes it clear that the words "under this section" specifically refers to § 8, because § 8 is the only section that lists the specific data to be collected for statistical purposes. In addition, although § 10 does require police departments to collect data, see note 2, *supra*, under the plain language of § 10, that collection occurs after the statistical analysis referred to in § 9 "suggest[s] that [a particular police department] [has] engaged in racial or gender profiling." Therefore, we conclude that the language of § 9 refers to data acquired during the initial phase of data collection under § 8, which specifically earmarks data for statistical analysis.

The union next contends that the language of § 9 in effect trumps the language of § 10, because § 9's prohibition on the collection of identification data makes § 10's allowance of the

collection of such data through the Massachusetts uniform cita-
tion form appear inconsistent. We do not agree.

Section 2 states that the purpose of the Act is "to identify
and eliminate any instances of racial and gender profiling by
police officers." See note 2, *supra*. Reading § 2 in conjunction
with § 10 leads us to conclude that to accomplish this objec-
tive, the Legislature intended to permit police departments to
collect officer identification information. Section 10 mandates
including "information already required under the Mas-
sachusetts Uniform Citation," which contains an officer
identification field. Moreover, § 2 specifically identifies "profil-
ing by police officers" as its target. The inclusion in § 2 of the
term "police officers," as opposed to police departments,
indicates that the Legislature intended individual officers
engaged in racial or gender profiling to be identified under
§ 10. Law enforcement agencies cannot be expected to combat
instances of profiling by individual police officers, as the Act
mandates, without data on the specific officers responsible for
acts of gender or racial profiling.

The union's reading of § 10 — as allowing a general
"exploration of whether there is actually racial profiling going
on in the community" — is inconsistent with the Act's purpose
specifically to address profiling "by police officers." Further-
more, the union's argument that § 9 negates § 10's allowance
of the collection of identification data is flawed. Such a reading
"negate[s] legislative intent," as laid out in § 2, and "defeat[s]
[the Act's] intended utility." *Bartlett* v. *Greyhound Real Estate
Fin. Co.*, *supra*, quoting *Milton Commons Assocs.* v. *Board of
Appeals of Milton*, 14 Mass. App. Ct. 111, 116-117 (1982). In
addition, the union's argument is inconsistent with its admission
that the Act has two distinct phases: (1) gathering information
for statistical purposes pursuant to §§ 8 and 9; and (2) data col-
lection after a statistical indication of profiling by a police
department. See notes 2 and 3, *supra*. In order to fulfil the Act's
objective of eliminating profiling by police officers, the only
statutory interpretation that renders the legislation in harmony
with common sense and sound reason is one that allows the col-
lection of officer identification information during that second
phase (i.e., once statistical analysis has already indicated that at

least some unidentified officers in a particular police department may be engaging in improper profiling).

*Conclusion.* For the reasons stated above, we conclude that the Superior Court judge did not commit an abuse of discretion in denying the union's motion for a preliminary injunction. Because the Act requires officer identification information during the second phase of data collection, the union has no likelihood of success on the merits.[5] Therefore, we vacate the stay of the collection of officer identification data ordered by the single justice of the Appeals Court, and we affirm the Superior Court judge's denial of a preliminary injunction.

*So ordered.*

---

[5]Because there is no likelihood of success on the merits, we need not address the other factors necessary for a preliminary injunction to issue.