SUPREME JUDICIAL COURT 
 
 SUSAN MIELE vs. FOUNDATION MEDICINE, INC.

 
 Docket:
 SJC-13697
 
 
 Dates:
 March 3, 2025 - June 13, 2025
 
 
 Present:
 Budd, C.J., Gaziano, Kafker, Wendlandt, Georges, Dewar, & Wolohojian, JJ.
 
 
 County:
 Suffolk
 

 
 Keywords:
 Contract, Severance agreement, Agreement not to compete, Performance and breach. Employment, Severance agreement. Statute, Construction.
 
 

       Civil action commenced in the Superior
Court Department on November 29, 2021.
      The case was heard by David A. Deakin, J.,
on a motion for judgment on the pleadings, and a question of law was reported
by him to the Appeals Court.
      The Supreme Judicial Court granted an
application for direct appellate review.
      Dawn Mertineit (Dallin R. Wilson also
present) for the defendant.
      Jeffrey M. Rosin (Lauren B. Bressman also
present) for the plaintiff.
      The following submitted briefs for amici
curiae:
      Ben Robbins & Natalie Logan for New
England Legal Foundation.
      Russell Beck, Stephen D. Riden, Nicole
Corvini, & Sarah C.C. Tishler for Russell Beck.
      Catherine M. Scott for Massachusetts
Defense Lawyers Association, Inc.
      GEORGES, J.  In this case, we answer the following
reported question regarding the Massachusetts Noncompetition Agreement Act,
G. L. c. 149, § 24L (act):
"Does
G. L. c. 149, § 24L, the Massachusetts Noncompetition Agreement
Act, apply to a non-solicitation agreement incorporated into a termination
agreement if the termination agreement includes a forfeiture provision in the
event that the employee breaches the non-solicitation agreement?"[1]
We conclude it
does not.  That is, for the reasons we
discuss below, we conclude that a forfeiture clause triggered by a breach of a
nonsolicitation agreement does not constitute a "forfeiture for
competition agreement" within the meaning of the act.  See G. L. c. 149, § 24L
(a).  Accordingly, the judge erred in
granting the motion for judgment on the pleadings, even in part.  The order is reversed, and the matter is
remanded for further proceedings consistent with this opinion.[2]  
      Background.  We recount the facts as drawn from the
parties' pleadings and attached exhibits, see Mullins v. Corcoran, 488 Mass.
275, 276 (2021), as well as facts otherwise incorporated by the pleadings, see
Merriam v. Demoulas Super Mkts., Inc., 464 Mass. 721, 723 (2013).  
      1. 
Facts.  In 2017, Foundation
Medicine, Inc. (FMI), hired Susan Miele, who, as a condition of employment,
signed a "Non-Competition, Non-Solicitation, Confidentiality and
Assignment Agreement" (restrictive covenant agreement).  That agreement included a nonsolicitation
provision barring Miele -- during her employment and for one year thereafter --
from "directly or indirectly . . . solicit[ing], entic[ing] or
attempt[ing] to persuade any other employee or consultant of [FMI] to leave the
services of [FMI] for any reason" or otherwise participating in or facilitating
his or her hire by Miele's subsequent employer.
      In 2020, Miele and FMI executed a
"Transition Agreement" (transition agreement) in connection with her
separation from the company.  The
agreement expressly incorporated the restrictive covenant agreement by
reference, stating its terms "remain[ed] binding and enforceable in all
respects."  In exchange for certain
transition benefits, the transition agreement included a forfeiture clause
providing that, if Miele committed a breach of that agreement or any other
agreement with FMI, any unpaid benefits would be forfeited and any previously
paid benefits "must be immediately repaid" to FMI.  FMI ultimately paid Miele approximately $1.2
million in transition benefits.  
      In 2021, following her departure from FMI,
Miele joined Ginkgo Bioworks (Ginkgo). 
FMI alleges that during the one-year period following her departure from
FMI, Miele subsequently recruited several then-current FMI employees to work at
Ginkgo.  FMI subsequently notified Miele
of her alleged breach of the transition agreement and, pursuant to the
forfeiture clause, ceased further payments and demanded repayment of benefits
already disbursed.  Miele refused to
comply with that demand.  
      2. 
Procedural history.  In late 2021,
Miele sued FMI, alleging that FMI committed a breach of the transition
agreement by withholding her transition benefits.  FMI counterclaimed for breach of contract,
asserting that Miele violated both the transition agreement and the restrictive
covenant agreement, and sought a judgment declaring that it was not obligated
to pay her any remaining transition benefits. 

      Miele moved for judgment on the pleadings,
arguing, in relevant part, that the provisions underlying FMI's counterclaims
were unenforceable under the act.  While
the act expressly does not apply to nonsolicitation agreements, Miele contended
that it applied here because "[i]t is the forfeiture of the [remaining
severance benefits] that makes the covenant not to solicit . . .
subject to the [act]."  In response,
FMI maintained that the act was inapplicable, emphasizing that it governs only
"noncompetition agreements" and expressly excludes nonsolicitation
agreements.  
      A Superior Court judge granted Miele's
motion in part, ruling that FMI could not enforce the forfeiture provision of
the transition agreement.  The judge
denied the motion in part, however, concluding that FMI's inability to recover
on its counterclaim for breach of the transition agreement did not preclude it
from asserting Miele's breach of the restrictive covenant agreement as a
defense to her breach of contract claim or from seeking damages for that
alleged breach.  The judge noted that the
act defines "noncompetition agreement" to include a "forfeiture for
competition agreement[]" -- one that "imposes adverse financial
consequences on a former employee" for engaging in competitive activity
following termination.  G. L.
c. 149, § 24L (a).  
      Although the act expressly excludes
nonsolicitation agreements from its scope, the judge concluded that the transition
agreement qualified as a "forfeiture for competition agreement" and
was therefore subject to the act.  The
judge reasoned that the agreement imposed "adverse financial consequences
on Miele," specifically, forfeiture of transition benefits, based on her
solicitation of former FMI colleagues to join her at Ginkgo.  Accordingly, the judge rejected FMI's
categorical position that all nonsolicitation agreements fall outside the act,
concluding instead that such agreements are excluded only if they do not impose
forfeiture for breach.  
      FMI moved to report the interlocutory
ruling to the Appeals Court, which the judge allowed.  Subsequently, the judge reported the
following question:
"Does
G. L. c. 149, § 24L, the Massachusetts Noncompetition Agreement
Act, apply to a non-solicitation agreement incorporated into a termination
agreement if the termination agreement includes a forfeiture provision in the
event that the employee breaches the non-solicitation agreement?"
      This court then allowed FMI's application
for direct appellate review.  
      Discussion.  The act, G. L. c. 149, § 24L (a)-(f),
"sets forth the requirements for an employee noncompetition agreement to
be enforceable."  NuVasive, Inc. v.
Day, 954 F.3d 439, 444 (1st Cir. 2020).  The act exempts several subsets of employees
from enforceable noncompetition agreements, provides "stronger substantive
and procedural protections" to employees subject to such agreements, and
"limit[s] employers to substantially reduced post-employment restrictions"
(quotations and citation omitted). 
DraftKings Inc. v. Hermalyn, 118 F.4th 416, 421 (1st Cir. 2024).  However, "to protect . . . applicable
legitimate business interests," the act also grants a Superior Court judge
the discretion to "reform or otherwise revise" offending language in
a noncompetition agreement in order "to render it valid and enforceable to
the extent necessary."  G. L.
c. 149, § 24L (d).  
      The act defines a "noncompetition
agreement" as an agreement between an employer and (current or
prospective) employee that prohibits the employee from engaging in specified
competitive activities after the employment relationship has ended.  G. L. c. 149, § 24L (a).  A "forfeiture for competition
agreement" is one that imposes financial consequences on a former employee
for engaging in competitive activities. 
Id.  The act expressly includes
forfeiture for competition agreements within the definition of noncompetition
agreements, but excludes "covenants not to solicit or hire employees of
the employer."  Id.  See Automile Holdings, LLC v. McGovern, 483
Mass. 797, 807 n.15 (2020) ("By its terms, the [act] does not apply to
nonsolicitation agreements or agreements made in connection with the sale of a
business").
      On appeal, the parties dispute whether a
nonsolicitation agreement, although expressly excluded from the statutory
definition of a "noncompetition agreement," may nevertheless
constitute a "forfeiture for competition agreement" under the act
when its violation triggers a forfeiture clause.  FMI argues that the Legislature's exclusion
of nonsolicitation agreements from the definition of noncompetition agreements
reflects an intent to similarly exclude them from the definition of forfeiture
for competition agreements.  Accordingly,
FMI contends that a nonsolicitation provision paired with a forfeiture clause,
as in this case, falls outside the scope of the act.  Miele disagrees, maintaining that her alleged
solicitation constitutes a "competitive activit[y]" within the
meaning of the statutory definition of a forfeiture for competition agreement.[3]
      1. 
Standard of review.  We review a
decision granting or denying a motion for judgment on the pleadings de
novo.  Hovagimian v. Concert Blue Hill,
LLC, 488 Mass. 237, 240 (2021).  In doing
so, we accept all facts pleaded by the nonmoving party as true and draw every
reasonable inference in that party's favor to determine whether the factual
allegations plausibly suggest an entitlement to relief.  Barron v. Kolenda, 491 Mass. 408, 415
(2023).  Questions of statutory
interpretation are likewise reviewed de novo. 
Hovagimian, supra.  
      2. 
Analysis.  In interpreting
legislative intent, we begin with the statute's plain language.  Plymouth Retirement Bd. v. Contributory Retirement
Appeal Bd., 483 Mass. 600, 604 (2019). 
Under the plain language of the Massachusetts Noncompetition Agreement
Act, (1) noncompetition agreements do not include nonsolicitation agreements,
and (2) forfeiture for competition agreements are a subset of noncompetition
agreements.  G. L. c. 149,
§ 24L (a) ("Noncompetition agreements include forfeiture for
competition agreements, but do not include . . . covenants not to
solicit or hire employees of the employer . . .").  See Automile Holdings, LLC, 483 Mass. at 807
n.15.  It follows, by necessary
implication, that forfeiture for competition agreements also exclude
nonsolicitation agreements.[4]  To
conclude otherwise would contradict the statute's express exclusion of
nonsolicitation agreements from the broader category of noncompetition
agreements.  
      Although the agreement here involves a
nonsolicitation provision coupled with a forfeiture clause, the inclusion of
the latter does not alter this analysis. 
That is, there is no justification for treating a nonsolicitation
covenant differently simply because it includes a forfeiture mechanism.  Cheney v. Automatic Sprinkler Corp. of Am.,
377 Mass. 141, 147 n.7 (1979) ("We . . . see no reason to treat
differently a forfeiture for competition clause").[5]  A nonsolicitation covenant remains just that
-- regardless of whether the remedy for breach involves forfeiture of
benefits.  Because the act expressly
excludes nonsolicitation covenants, and the forfeiture at issue is triggered
solely by breach of such a covenant, the act does not apply.[6]  
      Miele argues that the term
"competitive activities" in the definition of forfeiture for
competition agreement is broader than the phrase "certain specified
activities competitive with" in the definition of noncompetition
agreement, emphasizing the absence of the qualifying phrase "certain
specified."[7]  Compare G. L.
c. 149, § 24L (a) (defining noncompetition agreement as one
restricting "certain specified activities competitive with" employer
[emphasis added]), with id. (defining forfeiture for competition agreement as
one imposing financial consequences if employee "engages in competitive
activities" [emphasis added]).  She
contends that, even if solicitation is excluded from the former, it may still
fall within the broader scope of the latter. 

      This argument fails.  Although the statute does not define the
terms "competitive" or "activities," it is a well-settled
principle that statutory terms used more than once should be given a consistent
meaning throughout.  Williams v. Board of
Appeals of Norwell, 490 Mass. 684, 694 (2022). 
See Boston Police Patrolmen's Ass'n v. Police Dep't of Boston, 446 Mass.
46, 50 (2006) (words of statute "should be read as a whole to produce an
internal consistency" [citation omitted]). 
Thus, absent contrary context, the terms "competitive" and
"activities" in both definitions must be construed consistently.[8]
      "Although clear statutory language
ordinarily obviates the need to resort to rules of interpretation,
. . . legislative history may be referenced by way of supplementary
confirmation of the intent reflected in the words used" (citation
omitted).  Petrucci v. Board of Appeals
of Westwood, 45 Mass. App. Ct. 818, 822 n.7 (1998).  As discussed in the amicus brief submitted by
Russell Beck, the act "was shaped" in part by concerns espoused in
Cheney, 377 Mass. 141.  In Cheney, the
court cautioned that, if restrictions on covenants not to compete were not also
applicable to forfeiture for competition clauses, employers might circumvent
such restrictions by using the latter instead of the former.  Id. at 147 n.7.  Thus, any reform to the law governing the
enforceability of noncompetition agreements would have to account for such a
possibility -- and the act did just that. 
Specifically, to address this concern, the Legislature explicitly
defined noncompetition agreements to include such forfeiture provisions.  As a result, every forfeiture for competition
agreement falls within the act's definition of a noncompetition agreement, and
its scope is necessarily limited by the broader statutory definition.  Accordingly, because a "noncompetition
agreement" under the act applies only to "activities competitive
with" the employer, the term "competitive activities" within the
definition of a forfeiture for competition agreement must be construed as
coextensive with -- or narrower than -- the scope of "activities
competitive with" the employer.  
      While the precise role of the phrase
"certain specified" may remain open to interpretation, we need not
resolve that issue here.  The critical
flaw in Miele's position is that her reading would expand the scope of
forfeiture for competition agreements to include nonsolicitation provisions -–
despite the statute's clear exclusion of such provisions from the definition of
noncompetition agreements.  Because
forfeiture for competition agreements are expressly defined as a subset of
noncompetition agreements, and nonsolicitation agreements are explicitly excluded
from that category, solicitation cannot be reintroduced through the back door
of "competitive activities" without rendering the statute internally
contradictory.  
      Accordingly, we answer the reported
question in the negative:  a forfeiture
clause triggered by a breach of a nonsolicitation agreement does not constitute
a "forfeiture for competition agreement" subject to the act.  We remand the matter to the Superior Court
with instructions to reverse the order partially granting Miele's motion for
judgment on the pleadings.[9]
So ordered.  

footnotes
 

[1] A Superior
Court judge reported the question to the Appeals Court pursuant to Mass. R.
Civ. P. 64 (a), as amended, 423 Mass. 1403 (1996).

[2] We
acknowledge the amicus briefs submitted in support of the defendant by the
Massachusetts Defense Lawyers Association, Inc., the New England Legal
Foundation, and Russell Beck.  

[3] The parties
raise two additional issues on appeal: 
(1) whether the act applies to a nonsolicitation covenant specifically contained
in a separation agreement that includes a forfeiture clause triggered by a
breach of that covenant, and (2) whether, assuming the act does apply, the
Superior Court judge erred by failing to assess whether the agreement satisfies
the act's "minimum requirements." 
Because the plain language of the act excludes nonsolicitation
provisions from its scope, we need not reach these questions.  

[4] In his order,
the Superior Court judge observed that "[t]he Legislature could easily
have incorporated" the same exclusion of nonsolicitation covenants in the
definition of "forfeiture for competition agreements" as it did in
the definition of "noncompetition agreements," but "chose not to
do so."  This reasoning overlooks
that a forfeiture for competition agreement is a type of noncompetition
agreement.  Including a second exclusion
would have been redundant.  See Boston
Police Patrolmen's Ass'n v. Police Dep't of Boston, 446 Mass. 46, 50 (2006)
(courts interpret statutes to avoid rendering any part inoperative or
superfluous).  

[5] Although the
quoted language from Cheney, 377 Mass. at 147 n.7, addressed forfeiture for
competition clauses in the context of covenants not to compete, the "same
principles" apply equally to both noncompetition and nonsolicitation
provisions (citation omitted).  Automile
Holdings, LLC, 483 Mass. at 808.  

[6] Miele's
extended discussion of case law comparing noncompetition agreements and
nonsolicitation agreements is unpersuasive, as none of the cases cited
addresses the specific statutory language at issue.  We likewise reject her argument that the act
should be construed under the "rule of lenity," which she claims
requires this court to interpret the statute in favor of employees, whom the act
is intended to protect.  The "rule
of lenity" is a canon of statutory interpretation traditionally reserved
for criminal statutes, instructing courts to resolve ambiguity in favor of
defendants.  Charles C. v. Commonwealth,
415 Mass. 58, 70 (1993).  It has no
application here because the statute is both civil and unambiguous.  Curtatone v. Barstool Sports, Inc., 487 Mass.
655, 658 (2021) ("Where the language of a statute is clear and
unambiguous, it is conclusive as to legislative intent" [citation omitted]).  

[7] FMI contends
that the phrase "certain specified" merely requires an employer to
identify which "competitive activities" are prohibited
posttermination, and does not suggest that the scope of activities in that
definition is narrower than the broader definition.  

[8] For this
reason, another of Miele's arguments is readily dismissed.  She contends that the use of the plural term
"activities" in the definition of a forfeiture for competition
agreement suggests an expansive interpretation that encompasses
solicitation.  But the term
"activities" also appears in the plural in the definition of a
noncompetition agreement -– despite the statute's express exclusion of nonsolicitation
agreements from that category.  See G. L.
c. 149, § 24L (a).  

[9] FMI's request
for costs on appeal pursuant to Mass. R. A. P. 26 (a), as appearing
in 481 Mass. 1655 (2019), is denied.