GEORGE ALTMAN, INC. & others *vs.* VOGUE
INTERNATIONALE, INC.

Suffolk,    May 10, 1974. — August 15, 1974.

Present: TAURO, C.J., BRAUCHER, HENNESSEY, KAPLAN, & WILKINS, JJ.

*Receiver.    Equity Jurisdiction,* Receivership.    *Corporation,* Receivership.    *Equity Pleading and Practice,* Amendment.

The record of a suit in equity by a judgment creditor did not show that the appointment of a temporary receiver for the defendant business corporation, the judgment debtor, some weeks after the plaintiff's execution had been satisfied was wrong as a matter of law; the plaintiff's bill alleged the existence of a second, unsatisfied judgment creditor, and the second creditor was allowed to intervene on the same day the temporary receiver was appointed. [178-179]

Warranted findings in a suit in equity by a judgment creditor for the appointment of a receiver for the defendant business corporation, the judgment debtor, that there were valid claims against the defendant, that it had some assets but was insolvent, and that a denial of the petition would lead to a wasting or loss of the defendant's property warranted appointment of a permanent receiver on general equity principles. [179-180]

Following the appointment in a suit in equity by a judgment creditor of a temporary receiver for the defendant business corporation, the judgment debtor, an amendment of the plaintiff's bill alleging facts occurring after it was filed in support of a claim for appointment of a permanent receiver was properly allowed [180-181]; evidence of conduct of officers of the defendant before and after the appointment of the temporary receiver justified appointment of a permanent receiver [181-182].

BILL IN EQUITY filed in the Superior Court on July 12, 1972.

The suit was heard by *Linscott, J.*

*Thomas C. Cameron* for the defendant.
*Julius Thannhauser* for the plaintiffs.

WILKINS, J.   Vogue Internationale, Inc. (Vogue), chal-
lenges by appeal and exceptions various orders and decrees
in connection with the appointment of a temporary receiver
and a permanent receiver of its property.

On July 12, 1972, George Altman, Inc. (Altman), com-
menced this proceeding by the filing of a "bill of com-
plaint" seeking the appointment of a receiver of Vogue.
Altman was apparently seeking to allege sufficient facts to
justify the appointment of a receiver pursuant to G. L.
c. 156B, § 105.[1] Altman alleged that it had obtained a
judgment and execution against Vogue in February, 1972,
and that, despite numerous attempts by deputy sheriffs to
make demand for payment, demand had not been com-
pleted. Altman further alleged that there was another
judgment creditor holding an execution on which "the
sheriffs were unable to make demand." During the week
following the filing of the bill, eleven general creditors and
one judgment creditor of Vogue filed petitions for leave to
intervene. Vogue contends, and the appellees apparently
concede, that Altman's execution was satisfied in full on
July 20, 1972.[2]

Vogue contends that because Altman's execution was
satisfied, it was error for a judge on August 3, 1972, to
appoint a temporary receiver, to allow other creditors to
intervene, and to deny Vogue's motion to dismiss the
petition. The record does not disclose the nature of any
hearing held prior to the judge's action of August 3.

On August 30, 1972, Altman was allowed to amend its bill
to allege that funds of Vogue had been transferred on or

---

[1] General Laws c. 156B, § 105, inserted by St. 1964, c. 723, § 1, reads: "If a
judgment has been recovered against a corporation and it has neglected for thirty
days after demand made on execution to pay the amount due with the officer's
fees, or to exhibit to the officer real or personal property belonging to it and subject
to be taken on execution sufficient to satisfy the same and the execution has been
returned unsatisfied, one or more receivers may be appointed with the powers and
duties provided in, and subject to, section one hundred and four."

[2] A master subsequently appointed to determine the number and amount of
Vogue's creditors stated in his report (which was confirmed) that interest on
Altman's judgment was unpaid, although the principal amount of the execution
was paid on July 20, 1972.

about August 16, 1972, to two officers of Vogue by means of a check drawn by them on a corporate bank account; that motor vehicles owned by Vogue had been transferred to those officers subsequent to the appointment of the receiver; and that the assets of Vogue were being wasted. Vogue argues that the motion to amend should not have been allowed because it alleged events subsequent to the filing of the original bill.

On September 7, 1972, a trial was held on the issue whether a permanent receiver should be appointed. The judge found that Vogue was insolvent. He found that during July, 1972, Vogue transferred three automobiles owned by the corporation to officers of Vogue, that there was no businesslike arrangement to pay for those transfers and that, even after the appointment of the temporary receiver, the corporate officers acquired new certificates of registration for those automobiles in their names. The judge further found that in August, 1972, officers of Vogue withdrew at least $15,600 from the corporation for their own purposes and withdrawal of the money indicated "an intent on the part of . . . [Vogue's] officers to deplete corporate assets if afforded the opportunity." The judge also found that Vogue's president removed fur skins from the corporate premises on August 3, 1972, and that he had those furs at his home. He concluded that there had been "a wasting of assets, a depletion of assets and a removal of assets" and ruled that the creditors were entitled to a permanent receiver. Vogue argues that the evidence, which is reported, does not support the findings and rulings.

We turn first to Vogue's challenge to the appointment of the temporary receiver. The record contains no explanation of the evidence, if any, and the arguments of counsel which were presented to the judge who appointed the temporary receiver. The burden is on Vogue to show that the judge's decision was wrong. The existence of a second, unsatisfied judgment creditor was alleged in the original bill. That judgment creditor sought and was granted intervention by the judge on the same day he appointed the temporary receiver. We do not accept the argument that the judge had

no choice but to dismiss the petition when Altman's execution was satisfied, if indeed it was then established (or agreed) that the execution had been satisfied. Section 105 of G. L. c. 156B does not require the dismissal of a bill seeking a receivership when the execution of the judgment creditor whose circumstances support the bill has been satified in full. Indeed § 105 does not by its terms require that the bill be filed by the unsatisfied judgment creditor. A receivership is not solely for the benefit of the petitioning creditor or creditors. See *Wellman* v. *North,* 256 Mass. 496, 501 (1926); *New England Theatres, Inc.* v. *Olympia Theatres, Inc.* 287 Mass. 485, 494 (1934), cert. den. sub nom. *E. M. Loew's, Inc.* v. *New England Theatres, Inc.* 294 U. S. 713 (1935). It has been held that the appointment of a receiver is not barred where the judgment of the original petitioning creditor has been paid if other creditors have intervened. *Parten* v. *Southern Colonization Co.* 146 Minn 287, 289 (1920). Accord, *Eggleston* v. *Pantages,* 103 Wash. 458, 462 (1918). On this record we cannot say that the appointment of a temporary receiver was wrong as matter of law.

Effective appellate review of an interlocutory decree appointing a receiver, particularly a temporary receiver, is not always feasible. Such a decree can often have irreversible and far-reaching consequences for the debtor and others. Therefore, particular care must be exercised by a judge in order to ascertain that facts exist which justify, and in the judge's discretion require, the appointment of a temporary or permanent receiver. See *Hurley* v. *Boston R.R. Holding Co.* 315 Mass. 591, 616-617 (1944).[3]

Turning then to Vogue's challenge to the appointment of the permanent receiver, we conclude that the facts found by the judge were supported on the evidence and in the

---

[3] It is unclear that a decision by us favorable to Vogue on the issue of the appointment of a temporary receiver would have any significant consequence. It is too late to change whatever was or was not done between August 3, 1972 (the date the temporary receiver was appointed) and August 30, 1972 (the date the bill was amended). Vogue has not suggested any reason why a decision on the question of the appointment of a temporary receiver has any present importance.

judge's discretion warranted the appointment of a receiver on general equity principles. "Generally, the appointment of a receiver rests in the sound discretion of the court. But in order to justify the appointment of one on the application of a creditor, it should at least appear that he has a valid claim against the corporation, that there are assets applicable to its payment, and that he has exhausted his legal remedies, or that the circumstances are such that to deny the application would lead to a wasting and loss of property which otherwise might be made available for the payment of the debts of the corporation, and which could not be availed of in any other manner so satisfactorily as by the appointment of a receiver." *Falmouth Natl. Bank* v. *Cape Cod Ship Canal Co.* 166 Mass. 550, 568-569 (1896). See *New England Theatres, Inc.* v. *Olympia Theatres, Inc., supra,* at 492; *Albre* v. *Sinclair Constr. Co. Inc.* 345 Mass. 712, 717-718 (1963). The findings of the master established that there were valid claims against Vogue in substantial amounts. In fact Vogue stipulated that it owed over $85,000. It is clear that there were some assets of Vogue and that a finding of insolvency was warranted. The judge was further warranted in finding that to deny the application would lead to a wasting or loss of property which would otherwise be available to pay the debts of the corporation.

Vogue argues, however, that the appointment of the permanent receiver was unlawful because the motion to amend the bill should not have been allowed. Vogue contends that the judge committed an error of law in permitting the bill to be amended to rely on facts occurring after the bill was filed in order to support a claim for a new form of relief, a general equity receivership.[4]

The basic argument is that the court was without power to allow such an amendment. Section 51 of G. L. c. 231 permits an amendment so as to "enable the plaintiff to sustain the action for the cause for which it was intended to

---

[4] At trial Altman and the interveners undertook to justify the appointment of the permanent receiver solely on general equity principles and made no attempt to prove the allegations of the bill which related to a statutory receivership.

be brought." See G. L. c. 231, § 144, making § 51 applicable to equity proceedings. Considering that this is a proceeding in equity in which, on the basis of both the original bill and the amended bill, it was alleged that sufficient facts existed to require the appointment of a receiver of Vogue, we believe that the judge was authorized in his discretion to allow the amendment. There is nothing uncommon about the allowance of amendments to pleadings to show facts which have intervened since the commencement of suit. *Giles* v. *Giles,* 293 Mass. 495, 500 (1936). *Caputo* v. *Board of Appeals of Somerville,* 330 Mass. 107, 114 (1953).

The provision in G. L. c. 231, § 51, that an amendment may be permitted "to sustain the action for the cause for which it was intended to be brought," supports the view that an amendment to a bill in equity is appropriate which alleges facts which "are germane to the cause of suit stated in the ⌊original⌋ bill." *Atlantic Natl. Bank.* v. *Hupp Motor Car Corp.* 300 Mass. 196, 202 (1938). See *McDade* v. *Moynihan,* 330 Mass. 437, 444 (1953), where Chief Justice Qua referred to "the extreme liberality that prevails in this Commonwealth relative to amendments." See also *Wadsworth* v. *Boston Gas Co.* 352 Mass. 86, 88 (1967). The allowance of an amendment may be reversed on appeal only for an abuse of discretion or error of law. See *Duquenoy* v. *Dorgan,* 341 Mass. 28, 30 (1960); *Saldi* v. *Brighton Stock Yard Co.* 344 Mass. 89, 95 (1962).

Vogue finally argues that evidence of acts of its officers after the appointment of the temporary receiver cannot justify the appointment of a permanent receiver. Vogue points out that after entry of a decree appointing a receiver to close a corporation's affairs, the corporation's directors are not subject to the normal restraints imposed on directors against self-dealing. *Allen-Foster-Willett Co., petitioner,* 227 Mass. 551, 557-558 (1917). However, it would be illogical to hold that in passing on a request for the appointment of a receiver, a judge may not consider conduct by corporate officers which, if no temporary receiver had been appointed, would itself have justified the appointment of a receiver. Moreover, some of the mis-

conduct of the corporate officers was not subsequent to the appointment of the temporary receiver and that which was subsequent disregarded the rights of the temporary receiver established by judicial order.

We have considered all the points of substance argued by Vogue and find no occasion to alter the various rulings, orders, and decrees entered in the Superior Court.

*Exceptions overruled.*
*Decree affirmed.*