City of Boston *v.* Rochalska.

CITY OF BOSTON *vs.* JADWIGA ROCHALSKA & another.[1]

No. 06-P-2025.

Suffolk. December 4, 2007. - July 18, 2008.

Present: DUFFLY, GREEN, & MEADE, JJ.

*Practice, Civil,* Receiver. *Receiver. Building. State Sanitary Code. Housing Court,* Sanitary code violations.

A Housing Court judge properly denied the defendant's motion to dismiss the plaintiff's petition to appoint a receiver to bring the defendant's vacant property into compliance with State sanitary and building codes, where the defendant effectively waived the claim that she was not properly served with process by requesting that the judge stay the receivership. [242]

In a civil action concerning receivership of a condemned abandoned building, the judge properly declined to vacate the receivership, where G. L. c. 111, § 127I, which provides, in certain circumstances, for enforcement of the provisions of the sanitary code by means of an appointed receiver, applied to both vacant and occupied buildings. [242-247]

In an action involving receivership of a condemned building, the judge did not abuse his discretion in failing to make additional findings of fact establishing that the receiver committed fraud upon the court, where the judge implicitly discredited the evidence that purportedly supported such findings. [247-248]

In an action involving receivership of an abandoned building, sufficient evidence existed to support the Housing Court judge's findings regarding the expenses that the building's receiver incurred in demolishing and reconstructing the building's rear porches [248-249]; further, the judge's award of fees for the receiver's services was not clearly erroneous [249]; however, no view of the evidence supported the amount awarded for supervisory services performed for the receiver by a third party [249-250].

CIVIL ACTION commenced in the Boston Division of the Housing Court Department on January 16, 2002.

A motion to dismiss a petition to appoint a receiver was heard by *Wilbur P. Edwards, Jr.*, J.; a motion to vacate the appointment of a receiver was heard by *Manuel Kyriakakis*, J., and following an order on the receiver's account, a motion to amend findings of fact and rulings of law was also heard by him.

*Edward J. McCormick, III (Siobhan O. Conlon* with him) for the intervener.

[1]Marian Sklodowski, intervener.

*Karen B. Roach* for the plaintiff.

*Stuart T. Schrier* for Jonathan Kaye.

DUFFLY, J. The city of Boston (city) petitioned the Housing Court for appointment of a receiver, pursuant to G. L. c. 111, § 127I, to bring a vacant property owned by Jadwiga Rochalska into compliance with State sanitary and building codes. After the receiver had been appointed, his role was limited to "tak[ing] all necessary steps to enable the Boston Fire Department to enter the premises in the event of a fire." Having completed that task, the receiver was discharged, and following a hearing to establish the reasonableness of his claimed expenses, he was awarded $124,353.49.

The intervener, Marian Sklodowski, filed this appeal[2] from various orders and judgments of the Housing Court, primarily claiming that G. L. c. 111, § 127I, does not apply to vacant buildings and it was thus error to deny his motion to vacate the appointment of a receiver. He also appeals from the denial of Rochalska's motion to dismiss the city's petition to appoint a receiver (based on a claim of insufficiency of service of process); the denial of his own motion to amend findings of fact and rulings of law (asserting, inter alia, that the receiver committed a fraud on the court); and the award of $124,353.49 to the receiver, claiming that findings regarding certain allowed expenses of the receiver were not supported by the evidence.[3] We affirm in part and reverse in part.

---

[2]Rochalska apparently conveyed an interest in the property to Sklodowski during the course of these proceedings. In allowing Sklodowski's motion to intervene, the judge determined, without ruling on his specific ownership status, that Sklodowski held some interest in the property. See notes 6, 9, and 10, *infra*. Although no suggestion of death appears in the record on appeal, see Mass.R.A.P. 30(a), as amended, 378 Mass. 925 (1979), the city, in its brief, avers that Rochalska is now deceased. In any event, Rochalska never filed a brief in this appeal.

[3]Sklodowski's additional claims require no extended discussion. He asserts (in addition to his claim of fraud on the court, discussed in part 3.c, *infra*), that during trial the receiver made "meritless misrepresentations" to the court regarding expenses incurred in repairing the property, but makes no argument (and cites no authority) tying the assertions to any claim of legal error. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975); *Commonwealth* v. *Sanders*, 451 Mass. 290, 297 (2008); *Redstone* v. *O'Connor*, 70 Mass. App. Ct. 493, 502 (2007).

Sklodowski's claim that no expenses should have been awarded because the

1. *Background and proceedings.* Some years prior to the commencement of the within proceeding, the city through its inspectional services department condemned the property located at 199-201 Athens Street in Boston (property) as unfit for habitation due to various sanitary and building code violations, and issued a vacate order.[4] On January 16, 2002, the city filed its petition in the Housing Court for the appointment of a receiver for the property, alleging that the abandoned property had been condemned as unfit for human habitation in that, among other things, the porches were in a badly deteriorated state and conditions at the property presented a public safety hazard and a danger of vandalism, trespass, fire, and illegal activities occurring there.

As also set forth in the complaint, Rochalska had not applied for permits to remedy these conditions after the condemnation of the property entered, and there was a risk that the building would be destroyed beyond repair absent the appointment of a receiver who would be obligated to secure the property, repair it, and bring it into conformity with applicable sanitary and building codes. Following several unsuccessful attempts to personally serve Rochalska with the petition, the city's motion for service by publication was allowed, and on March 19, 2002, Jonathan Kaye was appointed receiver.

Some two weeks later, Rochalska, through an attorney, filed a motion supported by affidavits to stay the receivership, claiming that she was never served with notice of the proceedings and was

receiver failed to obtain court approval prior to executing any construction contracts, as required by the initial order of appointment, ignores the fact that the initial order was stayed and a new order entered limiting the receiver's authority to "tak[ing] all necessary steps to enable the Boston Fire Department to enter the premises in the event of a fire." Sklodowski makes no argument that the work undertaken by the receiver was not necessary to make the building safe for fire fighters to enter. To the extent that the provision in the original order survived the entry of the stay order, the judge did not abuse his discretion in considering the receiver's application for expenses, given the judge's finding that "the Receiver proceeded with accomplishing emergency repairs whereby the . . . property was cleared of debris and discarded furniture, thus resulting in the reduction of the risk of fire, as well as reconstructing the rear porches which were in danger of imminent collapse." We address the reasonableness of the awards and the amounts in part 3.d, *infra.*

[4]The Housing Court judge found that condemnation occurred "[a]pproximately eight (8) or nine (9) years ago." The record reflects that the building was condemned, and a vacate order issued, in August, 2000.

prepared to "immediately commence the rehabilitation of the entire subject property." The motion to stay was allowed by an order dated May 14, 2002, on the ground that "it is in the interests of justice to afford the respondent [Rochalska] an opportunity [within twenty-one days] to show that she is capable of rehabilitating the premises." The order did not fully divest the receiver of authority, however, but rather authorized Kaye "to take all necessary steps to enable the Boston Fire Department to enter the premises in the event of a fire."[5]

Two motions to dismiss the petition for appointment of a receiver were thereafter filed on Rochalska's behalf by another attorney (not apparently associated with the attorney who filed the motion to stay). The first sought to dismiss the petition without prejudice on the basis that Rochalska "has conveyed the property to Mari[a]n Sklodowski, an experienced contractor . . . [who] is now prepared to renovate the property and bring it into compliance with the applicable codes."[6] The second motion was brought pursuant to Mass.R.Civ.P. 12(b)(5), 365 Mass. 755 (1974), and alleged insufficient service of process.[7] Both motions to dismiss were eventually denied.[8] Sklodowski's motion to intervene as a

---

[5]The initial order of appointment provided, among other things, that the receiver "shall have all the rights, duties, obligations and protections of a Receiver as established by [G. L.] c. 111, § 127I, including but not limited to . . . [o]btaining financing to retain contractors to repair, restore and renovate the Property to render it safe and habitable for its intended use as a residential dwelling . . . ."

[6]The record reflects that a deed recorded on May 13, 2002, in the Suffolk County registry of deeds appears to be a conveyance from Rochalska to Sklodowski of both buildings located at 199 and 201 Athens Street. An addendum to that deed recorded the same date recites that Rochalska "gives [her] rights of 201 Athens Street . . . to Marian Sklodowski by Deeds, for consideration of rehab of 199 Athens Street . . . . Marian Sklodowski has the First Right of Refusal to purchase of 199 Athens Street . . . ."

[7]Attached to this motion was the supporting affidavit of Sklodowski, which avers that he had known Rochalska for many years and had, in October, 2000, personally mailed to the city's inspectional services department a registered letter from Rochalska notifying the department that she had moved from the property and providing her new address. Opposing the motion, the city attached two affidavits stating that no such letter had been received and that the letter was not in its files.

[8]After the stay of receivership was allowed, a guardian ad litem (GAL) was appointed for Rochalska, a ninety year old woman who spoke only Polish. Although the docket reflects that a motion seeking appointment of a GAL was allowed on May 15, 2002, it further reflects that the GAL, Sharon Jones, was

party defendant was allowed.[9]

In December, 2002, Sklodowski, as intervener, filed a motion seeking to "vacate and/or dissolve" the receivership, contending that the property was unoccupied and thus not subject to the appointment of a receiver under G. L. c. 111, § 127I. Two weeks later, the motion to vacate the receivership was denied but the motion to dissolve it was allowed, and Sklodowski was ordered "hereafter responsible for the rehabilitation of the property in question and bringing it into compliance, under continued court supervision, and subject to the right of [the city] to move for the appointment of a receiver for the property should the rehabilitation work fail to progress."

A hearing was conducted before a judge of the Housing Court to determine the amount of reasonable costs and expenses incurred by the receiver for work undertaken from the date of his appointment, March 19, 2002, to December 5, 2002. In his order dated September 30, 2003, the judge determined that $124,353.49 in costs and expenses had reasonably been incurred and that, $50,000 having been paid, the balance due to the receiver was $74,353.49, plus $7,597.19 in interest. The judge denied without

not appointed until August 9, 2002. At least in part because a report from the GAL was not yet available, the court delayed ruling on several pending motions, including both motions to dismiss and the motion to intervene, until December 5, 2002.

[9]In an order dated December 5, 2002 (see note 8, *supra*), which, inter alia, allowed Sklodowski's motion to intervene, a judge of the Housing Court found that Rochalska "retained an interest in the property as set forth in the Addendum to the Deed," and that, on the basis of the deed and addendum thereto, see note 6, *supra*, Sklodowski "may only own a portion of the premises." The judge determined, nevertheless, that Sklodowski had "demonstrated enough of an interest of record in the premises" to support allowance of the motion to intervene.

Kaye, who did not appeal from the order allowing Sklodowski to intervene or from the judgment awarding the receiver's expenses, now argues that Sklodowski lacks standing to bring this appeal because the deed transferring the property from Rochalska to Sklodowski was defective in that it was recorded after notice of receivership of the property was recorded. "We treat standing as an issue of subject matter jurisdiction," *Ginther* v. *Commissioner of Ins.*, 427 Mass. 319, 322 (1998), that cannot be waived by the parties. See *Braun* v. *Braun*, 68 Mass. App. Ct. 846, 852 (2007), and cases cited. On the facts of this case, we conclude that the judge did not abuse his discretion in allowing Sklodowski's motion to intervene. See *Cosby* v. *Department of Social Servs.*, 32 Mass. App. Ct. 392, 394-395 (1992).

hearing Sklodowski's motions for new trial and to amend find-ings of fact and rulings of law pursuant to Mass.R.Civ.P. 52(b), as amended, 423 Mass. 1402 (1996). Final judgment entered on March 24, 2005.[10]

2. *Summary of findings.* "We give a summary account of this protracted case embodied in a very extensive record. In doing so we apply the rule that findings of fact made by the judge below are to be accepted by us unless clearly erroneous, Mass. R. Civ. P. 52 (a), . . . and we also take the view that more gen-eral appraisals by the judge . . . are entitled to respect although they are not binding on us." *Perez* v. *Boston Hous. Authy.*, 379 Mass. 703, 705 (1980). Additional findings and evidence to sup-port them will be included in our discussion of the issues.

The property, which consists of two three-story buildings each containing three dwelling units, was vacant when the petition to appoint a receiver was filed. Rochalska was the owner of the property and had allowed it to become vacant when she received numerous notices of health and building code violations at the property; she attended hearings held by the city's inspectional services department that, in August, 2000, resulted in the issu-ance of an order of condemnation and an order to vacate the building. The property was in a dilapidated condition with rear porches in danger of imminent collapse. As a result of homeless people frequenting the building, several fires occurred there; the building was without essential utilities or smoke alarms, and debris and furniture blocked ingress and egress, rendering the property impassable. The Boston fire department had declared that the building was unsafe and dangerous, posting a red "X"

---

[10]Apparently addressing motions or pleadings concerning a dispute between Rochalska and Sklodowski as to ownership of the property (filed after entry of the interlocutory order determining the reasonableness of the receiver's expenses), the judge who had decided the issue of the receiver's expenses determined, in an order dated March 24, 2005, that the "limited purpose" for which the court had exercised its jurisdiction "has been satisfied and the receivership was effectively terminated." The judge noted that "with consent of . . . Rochalska, as well as her Guardian Ad Litem, [Sklodowski] proceeded to take corrective action in place of the Receiver, thereby effectively dissolv-ing the receivership, and [Sklodowski] brought the property in question up to code as a result of which said property has been rehabilitated and put back on the rental market." The order further alludes to actions brought by the GAL, then pending in the Probate and Family Court, contesting Sklodowski's claim of title to the property.

on the door. Despite having been given time to obtain permits and make repairs after the building was condemned, Rochalska did not undertake any substantial repairs, and a receiver was then appointed.

Kaye, as receiver with authority to undertake the repairs necessary "to enable the Boston Fire Department to enter the premises in the event of a fire," cleared the debris, discarded furniture that blocked ingress and egress to the property, and reconstructed the rear porches.

3. *Discussion.* a. *Service of process.* The claim that Rochalska was not properly served with process and that the judge thus erred in denying Rochalska's motion to dismiss pursuant to Mass.R.Civ.P. 12(b)(5) was waived.

Passing the question (not raised by the parties) of the intervener's standing to appeal from the denial of Rochalska's motion, cf. *Box Pond Assn.* v. *Energy Facilities Siting Bd.*, 435 Mass. 408, 415 (2001), we note that when Rochalska requested the Housing Court to stay the receivership so that she could "commence the rehabilitation of the entire subject property," she was asking that the court exercise its jurisdiction over the parties; as such she "waive[d] all questions in regard to service [of process] and submit[ted her]self to the jurisdiction of the court." *Hull* v. *Adams*, 286 Mass. 329, 333 (1934), quoting from *Gahm* v. *Wallace*, 206 Mass. 39, 44-45 (1910). See *Bateman* v. *Wood*, 297 Mass. 483, 486 (1937) ("party may lose the right to object to lack of proper service of process by . . . pleading to the merits").

b. *Scope of G. L. c. 111, § 127I.* We disagree with Sklodowski's argument that his motion to vacate the receivership was wrongfully denied[11] because G. L. c. 111, § 127I, does not apply to unoccupied buildings.[12] He argues that the statutory

---

[11]We reject Kaye's claim that the absence of the transcript from the hearing held on March 19, 2002, which resulted in the appointment of the receiver, precludes Sklodowski from arguing that the judge made any error in the appointment. Sklodowski's appeal does not relate to issues presented during the March 19, 2002, hearing. Rather than relying on facts that may have been elicited during that hearing, Sklodowski instead bases his argument on his interpretation of G. L. c. 111, § 127I, which we address, *infra.*

[12]General Laws c. 111, § 127I, as amended by St. 1992, c. 407, § 10, provides, in part:

"Upon the filing of a petition to enforce the provisions of the sanitary

language permits a court to appoint a receiver only when such appointment is "in the best interest of the occupants residing in the property" and is thus inapplicable to an unoccupied property. This misreads the language of the statute, particularly when viewed in the light of legislative intent as reflected in the statutory scheme.

"We must ascertain the intent of a statute from all of its parts, from the subject matter to which it relates, and we must construe it so as to render the legislation effective, consonant with reason and common sense." *Bay Colony Mktg. Co.* v. *Fruit Salad, Inc.,* 41 Mass. App. Ct. 662, 664-665 (1996), and cases cited. We read § 127I as setting forth circumstances that permit a court to appoint a receiver (i.e., when it "may" do so) as well as those circumstances when appointment of a receiver is mandated (i.e., when it "shall" do so). This case involves facts warranting the court's permissive appointment of a receiver.

In its opening paragraph, § 127I provides that when "affected occupants" or a "public agency" (such as the city's inspectional services department) files a petition to enforce provisions of the sanitary code, the court has the discretion to choose among three options: the court may (1) issue an injunction; (2) order that affected tenants make use and occupancy payments to the clerk of the court; or (3) appoint a receiver. See *Brittle* v. *Boston,* 439 Mass. 580, 594 (2003) ("may" is permissive, not mandatory). Nothing in the language of this portion of § 127I limits to occupied buildings the court's exercise of discretion to enforce the sanitary code through appointment of a receiver.

Section 127I goes on to describe circumstances where the court's discretion is limited, providing that the court "*shall* ap-

---

code, or any civil action concerning violations of the sanitary code by any affected occupants or a public agency, . . . the court may: issue temporary restraining orders, preliminary or permanent injunctions; order payment by any affected occupants to the clerk of court, in accordance with the provisions of section one hundred and twenty-seven F; or appoint a receiver whose rights, duties and powers shall be specified by the court in accordance with the provisions of this section.

". . .

"Whenever a petitioner shows that violations of the sanitary code will not be promptly remedied unless a receiver is appointed and the court determines that such appointment is in the best interest of occupants residing in the property, the court shall appoint a receiver of the property."

point a receiver" if a petitioner shows that sanitary code viola-
tions "will not be promptly remedied unless a receiver is ap-
pointed *and* the court determines that such appointment is in the
best interest of occupants residing in the property" (emphasis
added). G. L. c. 111, § 127I, third par. See *Hashimi* v. *Kalil*, 388
Mass. 607, 609 (1983) ("shall" is interpreted as imposing a
mandatory obligation); *Commonwealth* v. *Gagnon*, 439 Mass.
826, 832 (2003) ("When 'shall' and 'may' are used within the
same section of a statute, there is a presumption that the Legis-
lature realized the difference and was aware of their meanings").

Section 127I may thus be seen as requiring the appointment
of a receiver to undertake remedial action when there are ongo-
ing sanitary code violations in an occupied building "and the
court determines that such appointment is in the best interest of
occupants residing in the property," but making the appointment
discretionary when the building is unoccupied or, if occupied,
when the best interests of occupants do not require appointment.

A review of the broader context in which the statute was enacted
supports this reading of § 127I as applicable to vacant as well as
to occupied buildings. See *Boston Police Patrolmen's Assn.* v.
*Police Dept. of Boston*, 446 Mass. 46, 50 (2006) ("in determin-
ing the legislative intent, an appellate court should construe the
statute as a whole, to ensure that the statute serves its intended
purpose").

"General Laws c. 111, §§ 127A-127N, reflect a comprehen-
sive legislative attempt to effectuate compliance with minimum
health and safety standards for residential premises." *Negron* v.
*Gordon*, 373 Mass. 199, 202 (1977).[13] These sections of c. 111
address the need to protect the health and safety of occupants of
buildings as well as that of the general public where vacant
buildings pose a threat of harm.

Section 127A of G. L. c. 111, as appearing in St. 1983, c. 84,
§ 1, provides for the adoption of public health regulations, to
be known as the "state sanitary code," which

"shall deal with matters affecting the health and well-

---

[13]General Laws c. 111, §§ 127A-127J, were inserted by St. 1965, c. 898,
§ 3. Chapter 898 thereof was entitled, "An Act Relative to the Enforcement
of the Minimum Standards of Fitness for Human Habitation Existing Under
the State Sanitary Code."

being of *the public . . .* [and] may provide for the demolition, removal, repair or cleaning by local boards of health and, in the cit[y] of Boston, . . . . by the commissioner of housing inspection, of *any structure* which so fails to comply with the standards of fitness for human habitation . . . as to endanger or materially impair the health or well-being of *the public*" (emphasis added).

Nothing in this language limits the scope of § 127A to occupied buildings.[14]

Other provisions in G. L. c. 111 further demonstrate a legislative intent to protect the health and safety of both the occupants of a building and members of the general public, and to do so through the appointment of a receiver when necessary. Section 127B provides that upon determining that a building "is or may become *a nuisance . . .* or may be a cause of sickness or home accident to the occupants *or to the public*" (emphasis added), a board of health may issue an order to vacate a building or to bring it into compliance with the sanitary code. In the event of failure to comply with the board of health's requirements, the court may appoint a receiver to enforce the board's orders.[15,16]

We note further that nothing in the General Laws defines a

---

[14]Compare language later in the same paragraph of G. L. c. 111, § 127A, inserted by St. 1973, c. 880, requiring that the sanitary code "designate those conditions which, when found to exist upon inspection of residential premises, shall be deemed to endanger or materially impair the health or safety of persons occupying the premises."

[15]General Laws c. 111, § 127B, provides, in pertinent part:

"Upon a determination by the board of health, or, in the cit[y] of Boston . . . by the commissioner of housing inspection, after examination as provided in said code, that a building, tenement, room, cellar, mobile dwelling place or any other structure (a) is unfit for human habitation, (b) is or may become a nuisance, or (c) is or may be a cause of sickness or home accident to the *occupants or to the public*, it may issue a written order to the owner or occupant or any of them thereof, requiring the owner or occupant to vacate, to put the premises in a clean condition, or to comply with the regulations set forth in said code which are not being complied with . . . . *If the person so notified fails within a reasonable time to remedy the conditions thus set forth, the superior court on a petition in equity brought by the board of health, shall have jurisdiction, to enforce the requirements of the board of health, by appointment of a receiver in accordance with the provisions*

nuisance as being limited to occupied buildings. A common nuisance is defined, inter alia, as "a burnt, dilapidated or dangerous building or other structure." G. L. c. 139, § 1, as amended through St. 1970, c. 649, § 2. A local board of health is empowered by G. L. c. 111, § 131, when "necessary for preservation of life or health to enter any land, building or premises . . . within its town, to examine into and destroy, remove or prevent a nuisance . . . ." See G. L. c. 111, § 129 (permitting court to order nuisance to be removed or destroyed); G. L. c. 111, § 130 (permitting court to enjoin the maintenance of a nuisance).

We conclude that G. L. c. 111, § 127I, is applicable both to vacant and occupied buildings.[17] Such an interpretation comports

---

*of section one hundred and twenty-seven I*, or by providing other equitable or legal relief.

"...

"The superior court, housing court, and district court shall have jurisdiction in equity to enforce the provisions of said code."

(Emphasis added.) See St. 1983, c. 84, § 2; St. 1992, c. 407, § 2; note 16, *infra*.

[16]The reference in § 127B to § 127I reflects a legislative intent that these sections be read together. See *Boston Police Patrolmen's Assn.* v. *Police Dept. of Boston*, 446 Mass. at 50, quoting from 2A Singer, Sutherland Statutory Construction § 46.05, at 154 (6th ed. 2000) ("it is 'not proper to confine interpretation to the one section to be construed' ").

General Laws c. 111, §§ 127B and 127I, were concurrently amended by St. 1992, c. 407, "An Act Clarifying the Powers of Housing Receivers" (Act). Section 2 of the Act amended G. L. c. 111, § 127B, to allow the board of health to petition the court to enforce the requirements of the board of health, "by appointment of a receiver in accordance with the provisions of section one hundred and twenty-seven I, or by providing other equitable or legal relief." General Laws c. 111, § 127I, most recently amended by the same Act, was completely rewritten to expand the responsibilities and powers of court-appointed receivers. See St. 1992, c. 407, § 10.

[17]The receiver refers in his brief to House Doc. No. 1278, which, as of the date of this opinion, has been referred to the House Committee on Housing for further study. The bill proposes to amend § 127I as follows (emphasis added to indicate proposed additional language):

"Whenever a petitioner shows that violations of the sanitary code will not be promptly remedied unless a receiver is appointed and the court determines that such appointment is in the best interests of occupants *who reside or in the future may reside* in the property, *or any abutter for whom the property poses an immediate and material risk to health*

with the plain meaning of the statute and serves the intended purpose of the statute to promote and ensure compliance with minimum health and safety standards through appointment of a receiver, when a failure to do so poses a risk of harm to the health or well-being of occupants of such buildings or to members of the public who come in contact with or live near vacant buildings that are not in compliance with applicable codes.

Here, the city complied with the requirements of G. L. c. 111, § 127I, when, after some sixteen months of inaction by Rochalska, it sought the appointment of a receiver to remedy the sanitary code violations that remained after the property had been condemned and any occupants ordered to vacate the property.

c. *Fraud on the court.* Sklodowski argues that, had the judge amended his findings as requested, those additional findings would have established that Kaye as receiver committed fraud upon the court by purporting to make payments to Daniel Buckley of Hearthstone Development Group, LLC ($47,000 on April 13, 2002, and $44,525 on August 12, 2002), that in fact were returned to Kaye (by two checks to Kaye on May 3, 2002, and August 19, 2002), and by misrepresenting the amounts billed and payments made in connection with the removal and repair of the rear porches.

A fraud on the court results from an "unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Wojcicki* v. *Caragher*, 447 Mass. 200, 210 (2006), quoting from *Paternity of Cheryl*, 434 Mass. 23, 35 (2001). We need not decide whether this principle would have application to the facts as proposed by Sklodowski.

The judge, in denying Sklodowski's motion to amend the

___

*or safety,* the court shall appoint a receiver of the property. *A receiver may be appointed for occupied or unoccupied residential property, vacant lots, or commercial premises so long as the subject property poses an immediate and material risk to the health or safety of an occupant.*"

We "draw no inference on the issue of the interpretation of the statute from this pending legislation . . . ." *Conservation Law Foundation, Inc.* v. *Director of the Div. of Water Pollution in the Dept. of Envtl. Quality Engr.*, 22 Mass. App. Ct. 544, 551 n.12 (1986).

findings of fact, implicitly discredited the evidence that Sklo-dowski cites as supporting the proposed findings.[18] "We recognize that the judge, who has a firsthand view of the presentation of evidence, is in the best position to judge the weight and credibility of the evidence. . . . Where there are two permissible views of the evidence, the fact finder's choice between them cannot be clearly erroneous." *Lily Transp. Corp.* v. *Royal Inst. Servs., Inc.*, 64 Mass. App. Ct. 179, 181 (2005), quoting from *Demoulas* v. *Demoulas Super Mkts., Inc.*, 424 Mass. 501, 509-510 (1997).

The judge did not abuse his discretion in failing to make additional findings. See *West Springfield* v. *Olympic Lounge, Inc.*, 45 Mass. App. Ct. 923, 924 (1998) (judge has discretion not to revisit findings when denying motion to amend findings of fact).

d. *Sufficiency of the evidence.* Sklodowski contends that the evidence does not support an award of $9,694.68 for lumber and $12,575.00 for labor to reconstruct the rear porches; $20,000 for supervisory services provided by Buckley; and $9,500.00 for the "Receiver's Fee."

As previously stated, we accept as true the judge's findings of fact unless they are clearly erroneous. See *Henry* v. *Morris*, 62 Mass. App. Ct. 714, 717 (2004). With this principle in mind, we discuss each of the claimed erroneous findings.

(i) *Rear porches.* There was sufficient evidence to support the award of $9,694.68 for lumber and $12,575.00 for the demolition and reconstruction of the rear porches. The evidence includes an invoice from Wachusett Lumber for $9,694.68, and check stubs reflecting payments made to Charles D. Joseph, totaling $12,575. Permit applications to remove the rear porches

---

[18]However much we might have drawn less innocent conclusions from the evidence had we been called upon to decide these matters in the first instance, we defer to the trial judge, who was entitled to credit Buckley's explanation regarding the money that exchanged hands. Compare *Yankee Microwave, Inc.* v. *Petricca Communications Sys.*, 53 Mass. App. Ct. 497, 517 n.23 (2002). Buckley testified that Kaye's payments to him of $47,000 and $44,525 were intended to serve as a "bank roll" to cover construction costs because Buckley did not wish personally to incur the out-of-pocket expenses; according to Buckley, he later returned the funds to Kaye because someone else paid for the labor and other materials and he no longer needed the funds to cover these costs. Buckley testified that "instead of going through my account they went through Jonathan Kaye's account."

list Charles Derrick Joseph as the contractor, and Buckley testified that Joseph was licensed to work on the property.

(ii) *Receiver's fee.* The judge's determination that $9,500 was a reasonable fee for the receiver's services finds support in Kaye's testimony that he had received a fee of $7,500 for another receivership that was "much less complex and less time consuming," and that, because the project had tied up his working capital, it prevented him from taking on other work. The award was not clearly erroneous. See *Demoulas* v. *Demoulas Super Mkts., Inc.,* 424 Mass. at 510 ("[W]e do not review questions of fact found by the judge, where such findings are supported on any reasonable view of the evidence, including all rational inferences of which it was susceptible. So long as the judge's account is plausible in light of the entire record, an appellate court should decline to reverse it" [citations omitted]).

(iii) *Quantum meruit.* The judge observed that "[t]he most troublesome part of the Receiver's claim involves Daniel Buckley of Hearthstone Development. . . . [T]he relationship between the Receiver and Daniel Buckley was not an arms length relationship since Buckley had worked for the Receiver as a job superintendent on a number of occasions."[19] However, the judge found that "there is no doubt that Buckley performed general supervisory services for the Receiver on the subject property and is entitled to reasonable compensation for same." Concluding that "substantial work was accomplished on the project under supervision of Buckley," the judge awarded $20,000 "on a quantum mer[u]it basis" for services performed by Buckley.

No view of the evidence supports the amount of this award. Even crediting Buckley's testimony that he provided supervisory

---

[19]The judge also found that "the record keeping by Buckley on work performed on this receivership left a great deal to be desired and was reconstructed after the fact, to great degree, from records furnished by the Receiver. . . . There is an estimate of time spent by Buckley on the project from March 23, 2002 through June 22, 2002, totaling 460 hours . . . . Buckley admitted during testimony that he made up the exhibit totaling the 460 hours worked by him on this property during the Fall of 2002. There was confusing testimony from Buckley and the Receiver as to monies paid by the Receiver to Buckley prior to the hearing, and then said monies being repaid by Buckley to the Receiver."

and security-related services for fourteen weeks, and on this basis awarding $400 per week,[20] which is the amount actually paid to Buckley for his services for eleven of the claimed weeks,[21] the total amount would be, at most, $5,600, not $20,000.

4. *Conclusion.* We affirm the orders denying (1) Rochalska's motion to dismiss the petition; (2) the intervener's motion to vacate the appointment of a receiver; and (3) the intervener's motion to amend findings of fact and rulings of law. As to the order and judgment awarding the receiver $124,353.49 for his reasonable expenses, we vacate the award of $20,000 for services provided to the receiver by Daniel Buckley of Hearthstone Development Group, LLC, and remand for such further proceedings as may be appropriate to determine a reasonable amount of reimbursement; we affirm the balance of the award.

*So ordered.*

---

[20]The judge approved as reasonable the sum of $400 per week for twelve weeks paid to Lee Riquelme for similar services.

[21]Check stubs in evidence reflect that eleven weekly payments made to Buckley between April 4, 2002, and June 13, 2002, each in the amount of $400, were for supervision or clerk of the works and security services. Kaye testified that he paid Buckley $200 per week for security for the property, which included "[d]rive-bys as necessary and entering the property" to assure that the property was "supervised appropriately." Kaye's testimony is consistent with Buckley's proposal dated March 15, 2002, which included an estimate of "$200 per week, drive by and building check interior." This would support an inference that $200 per week was paid to Buckley for supervision and $200 was paid for security services. It is unclear from the findings whether the judge intended to reimburse the receiver for Buckley's supervisory services only and not security services, or for both; the judge stated that among other claimed expenses, the "[c]laimed expenses for security . . . have been adequately compensated for in the awards made hereinbefore for clean-up, porch demolition and construction work."