Swan, J.
LaSalle Bank (“LaSalle”), the holder of a mortgage on a multi-family building on Salem Street in the city of Malden (“City”), has appealed the allowance by the Malden District Court of a petition by the City to appoint a receiver for the property, and the subsequent establishment of, and foreclosure on, the receiver’s lien.
In September, 2007, the City’s building inspector sent two notices to Jean Clodomir (“Clodomir”), the owner of the property, that Clodomir may have had an illegal basement apartment at the property, and that there were no permits on file to allow one. In March, 2008, the City commenced an action against Clodomir, LaSalle, and two other mortgagees, alleging that the property contained a basement apartment in a Residence A zoning district in which, under the City’s zoning ordinance, only single-family dwellings are allowed, and that no building permit or certificate of occupancy had been obtained, in violation of both the ordinance and the State Building Code. The City demanded an injunction that Clodomir cease and desist from the illegal use, a judgment for the accrued civil penalty ($300.00 per day), and an order that LaSalle and the other mortgagees correct and abate the violations. LaSalle filed an answer, through its nominee,[1] generally denying the allegations in the City’s petition, and asserting pro forma affirmative defenses.
LaSalle subsequently foreclosed on its mortgage and on May 14, 2008, was the highest bidder at the ensuing auction.[2] On June 23, 2008, the City filed a motion for the appointment of a receiver, pursuant to G.L.c. Ill, §1271, on the grounds that the defendants had failed and refused to correct the violations. Of the defendants, only LaSalle opposed the motion, stating that it was going to evict the tenants at the property; once the eviction was completed, it would be able “to make any repairs to any alleged violations;” and “[i]n this instance, there is some question as to the exact code violation. There is an allegation of a basement apartment; however, no formal inspection has been completed.” On October 3, 2008, a hearing on the motion was held, at which the City’s counsel stated that “the case was filed back in February or March of this year, there have been no orders issued, because I have been trying to work cooperatively with a counsel for the lender, however, here we are into October *132 and the case is really no further along than it was when it was filed in February or March.” LaSalle’s attorney conceded that no work had been done because a tenant at the property had “been quite difficult.” On October 6, 2008, the court issued an order appointing the Malden Redevelopment Authority (“MRA”) as receiver, with powers and duties, inter alia, to “do all things permitted by G.L.c. Ill, §1271,” to collect rents, to perform repairs to remedy all building, safety, and health code violations, to pay taxes and mortgages, and to file a report and accounting of all its expenses and disbursements. The order gave MRA a priority lien under G.L.c. Ill, §1271 upon its recording at the registry of deeds. On December 5, 2008, the City filed with the court reports by building and wiring inspectors and the board of health, and proposals and contracts for repairs to the property. The board of health reports, dated October 21 and November 17, 2008, cited fifty-seven violations of the State Sanitary Code. MRA commenced repair work on the property.
In February, 2009, MRA filed motions for approval of its first and final account and to establish and foreclose on its lien. The account showed expenditures totaling $200,993.14, of which $168,855.00 constituted construction costs; $16,963.88, a property management fee; $10,146.00 in administrative costs, and interest and legal fees. LaSalle filed an opposition questioning many repairs as cosmetic and excessive, challenging MRA’s management fee and administrative costs, and requesting a reduction of the lien amount. After a hearing on February 25, 2009, the motions were allowed. On April 27,2009, LaSalle, this time acting by its attorney-in-fact,[3] filed an “emergency motion” for reconsideration of the appointment of a receiver and of all subsequent orders on the grounds that a receiver under G.L.c. Ill, §1271 is authorized only for violations of the State Sanitary Code, and that no such violations were cited in the City’s original complaint. At the same time, LaSalle moved to vacate the order of foreclosure sale. Both motions were thereafter denied, as was LaSalle’s emergency motion to enjoin foreclosure pending appeal.[4] LaSalle’s motion for entry of final judgment pursuant to Mass. R. Civ. R, Rule 54(b) was allowed.
The receivership was ordered on the City’s motion pursuant to G.L.c. Ill, §1271, which provides:
Upon the filing of a petition to enforce the provisions of the sanitary code, or any civil action concerning violations of the sanitary code by any affected occupants or a public agency, whether begun in the district, housing or superior court, and whether brought under [G.L.c. Ill] section one hundred and twenty-seven C or otherwise, the court may: issue temporary restraining orders, preliminary or permanent injunctions; order payment by any affected occupants to the clerk of court, in accordance with the provisions of [G.L.c. 111] section one hundred and twenty-seven F[5]; or appoint a receiver whose rights, duties and powers shall be specified by the court in accordance with the provisions of this section.
*133 LaSalle argues that relief under this section could not be invoked because, first, the City did not precede its request with a petition to enforce the sanitary code pursuant to G.L.c. Ill, §127C; and, second, the complaint that commenced the action cited no violations of the sanitary code, but was restricted to violations of the City’s zoning ordinance and the State Building Code, namely, the conversion of the basement into a dwelling unit without a permit. Yet during the three and one-half months from the filing of the City’s motion for the appointment of a receiver until the hearing on that motion, LaSalle did nothing more than submit a two-page opposition that raised neither of the points it now argues. LaSalle stated in its opposition only that “ [i]n this instance, there is some question as to the exact code violation. There is an allegation of a basement apartment; however, no formal inspection has been completed.” Such a vague response did not identify for the court the arguments that LaSalle now advances — the alleged necessity of first bringing an action under §127C and the unavailability of a §1271 receivership for anything other than sanitary code violations. At the ensuing hearing on the motion to appoint a receiver, LaSalle addressed neither issue. Instead, its counsel argued only that LaSalle was having difficulty evicting a tenant and that eviction was a necessary step before LaSalle could effect repairs. He did not say why.
Aside from this lackluster defense, LaSalle did nothing more at that time. LaSalle could have moved to dismiss the complaint. See City of Boston v. Rochalska, 72 Mass. App. Ct. 236, 237 (2008). It did not. It could have moved to vacate, or stay, the order of appointment, this time with appropriate legal arguments. Id. at 237, 242; Mass. R. Civ. P., Rule 60. It did not. LaSalle also could have requested the trial judge to report the interlocutory order to this Appellate Division for determination, G.L.c. 231, §108; Dist./Mun. Cts. R. A. D. A., Rule 5, or even sought relief from the Supreme Judicial Court. G.L.c. 211, §3. While we recognize that “[ejffective appellate review of an interlocutory decree appointing a receiver, particularly a temporary receiver, is not always feasible,” George Altman, Inc. v. Vogue Internationale, Inc., 366 Mass. 176, 179 (1974), it is available in appropriate cases, especially where, as here, corrective action, if any is needed, should be addressed before a receiver steps in, expends funds, and takes other measures that may be irreversible. But no attempt was made.
Finally addressing what it considered the fatal absence of any reference to the sanitary code in the City’s initial complaint, LaSalle filed a motion for reconsideration of the receiver’s appointment on April 27, 2009. Oddly entitled an “emergency motion,” it came almost seven months after the order of appointment and over two months after the receiver had finished expending in excess of $200,000.00 to bring the property into code compliance. This belated request was properly denied.
LaSalle’s claims are, in any event, without merit. For the first time on appeal, LaSalle argues that a municipality must initially proceed with a petition specially designated as one under G.L.c. Ill, §127C before seeking the appointment of a receiver under §1271. Although the issue was not preserved or even raised below, we address it briefly. Section 127C establishes a mechanism under which a municipality, by its board of health, may commence a proceeding in the district, housing, or superior court when it finds certain sanitary code violations in a residential building. The next statutory sections prescribe the procedures to be employed and the remedies that may be ordered, including the appointment of a receiver under §1271. But §1271, by its very terms, does not require the filing of a §127C petition as a condition *134 precedent to the appointment of a receiver. Section 1271 states that the court may appoint a receiver “[u]pon the filing of a petition to enforce the provisions of the sanitary code... whether brought under section one hundred and twenty-seven C or oth-erwisé1 (emphasis added). In short, the plaintiff in any proceeding involving sanitary code violations may invoke a §1271 receivership.
LaSalle is correct, however, in its assertion that the City’s inartfully drawn complaint, upon which the receiver was appointed, did not allege violations of the sanitary code. The specific target of the complaint was, rather, an illegal basement apartment. But this deficiency, which LaSalle failed, repeatedly, to point out to the court below, was identified and cured by the City. Subsequent to the appointment of the receiver, the City filed with the court on December 5, 2008 a series of reports, two from its board of health, listing fifty-seven sanitary code violations under 105 CMR §410.00 et seq. at the property, eight of which were in the very basement described in the complaint. Needless to say, the neater practice would have been to amend the complaint to allege sanitary code violations. “There is nothing uncommon about the allowance of amendments to pleadings to show facts which have intervened since the commencement of suit.” George Altman, Inc., supra at 181. Thereafter, the City should have prepared and filed the board of health reports at, or prior to, the receivership hearing. But, as noted, this cart-before-the-horse procedure went unanswered and unchallenged by LaSalle at the time, and for months thereafter.[6]
The order of appointment empowered MRA to make both emergency repairs and additional repairs to bring the property into compliance with the sanitary and building codes and applicable fire, safety, electrical, and plumbing regulations, all well within the statutory scope of §1271. The December 5, 2008 filing, noted above, included proposals and construction contracts detailing the project to be undertaken by the receiver. LaSalle met this filing with silence, and made no attempt to object *135 to the work going forward. Upon completion of the work, a hearing was held on MRA’s motion for approval of its first and final account of its expenditures. Only then did LaSalle object on the grounds that much of the work done was not related to health or safety, and that the property was vacant and did not require such high administrative and management fees. At the hearing, LaSalle had a full opportunity to challenge the expenses on these grounds. Yet when the court asked LaSalle’s counsel whether he wished to cross-examine City officials, he replied, “I don’t think I need to.” By approving the account, the court found the expenses to be reasonable. LaSalle has not shown how the court’s finding was in any way clearly erroneous. Rochalska, supra at 248.
LaSalle raises two other points. It claims that it was not given the chance to effect the repairs itself prior to the appointment of the receiver. As noted, it had three and one-half months to do so between the filing of the motion for receivership and the hearing on the motion. No repairs were made. This fact drew the curiosity of the judge at the later hearing on MRA’s motion for approval of its account. The court inquired why LaSalle, as the foreclosing bank, “didn’t... just step in and take over the property when they got the notice” of violations. LaSalle’s counsel replied, ‘Your Honor, I’ve asked the same question.” LaSalle also argues that it was not given a chance to pay off the receiver’s lien. The bank, from the time of the lien to the time of the foreclosure sale, had over two months to do so. Following its now well-established pattern of inaction, it did not.
LaSalle seeks to terminate the order appointing a receiver, as was done by direction of the Supreme Judicial Court in Lopez v. Medford Community Ctr., Inc., 384 Mass. 163, 169-170 (1981). In this case, however, the receivership has already terminated with the final account and public auction. LaSalle would have us undo everything that has occurred from the appointment of the receiver on, at a time long after the City’s inspectors found an array of dangers to health and safety; and the City, through its receiver, has expended many thousands of dollars improving a building that LaSalle itself owned and ignored; and the property has been sold in foreclosure. For the reasons stated, we decline to do so.
Judgment affirmed.
So ordered.

 Mortgage Electronic Registration Systems, Inc.

 Technical issues apparently prevented the recording of a foreclosure deed to LaSalle.

 GMAC Mortgage, LLC.

 At oral argument, we were informed that the foreclosure sale was completed at a public auction.

 General Laws c. Ill, §127F establishes procedures for the payments of rent during the pendency of the proceeding.

 What is also of concern is that the order of appointment, which was no doubt drafted by the City’s attorney, opens with the court’s finding that the respondents — obviously including Clodomir, but including the bank respondents as well — “did not have the assets readily available to repair or maintain the property in a safe and habitable condition.” The finding also stated that the board of health had “expressed concern over the increasing deterioration of the Property.” While subsequent events might justify some of these statements, the record does not support these findings when made (except for the City’s mention at the receivership hearing of an “illegal deck,” shown in a later pleading to have been the subject of a board of health investigation in 2006 after a child was injured on it). From this, LaSalle now argues that it was an abuse of discretion to issue the order. See Lopez v. Medford Community Ctr., Inc., 384 Mass. 163, 169 (1981). It is well settled that “particular care must be exercised by a judge in order to ascertain that facts exist which justify, and in the judge’s discretion require, the appointment of a temporary or permanent receiver.” George Altman, Inc., supra at 179. As noted, an amendment to the complaint and the presentation of board of health documents would have removed this issue from our review as well. But once again, LaSalle let pass the opportunity to seek immediate corrective action on this issue, which has also been raised on appeal for the first time.