### Joseph Cybulski *vs.* Andrea Vaiani.

No. 08-P-1030.

Middlesex. June 3, 2009. - October 13, 2009.

Present: Mills, Green, & Sikora, JJ.

*Uniform Arbitration Act. Arbitration,* Confirmation of award, Judicial review. *Statute,* Construction.

This court concluded that where parties begin a civil action in Superior Court and then suspend that litigation in favor of an agreement to arbitrate their dispute, the Massachusetts Uniform Arbitration Act, G. L. c. 251, §§ 1 et seq., requires the parties to file their application for confirmation, vacation, or modification of the resulting arbitral award in the original Superior Court litigation, and prohibits the parties from commencing a separate action for those purposes. [384-387] Green, J., concurring.

Civil action commenced in the Superior Court Department on May 14, 2007.

A motion to confirm an arbitration award was heard by *Isaac Borenstein,* J., and entry of a final judgment was ordered by him.

*Sean L. Cannon* for the plaintiff.

*James C. Crowley, Jr.,* for the defendant.

Sikora, J. This appeal presents a procedural issue located between the lines of the Massachusetts Uniform Arbitration Act, G. L. c. 251, §§ 1 et seq. (Arbitration Act). If parties begin a civil action in the Superior Court, then suspend that litigation and make an agreement to arbitrate their dispute, does the suspended action serve as the mandatory site for judicial review of the arbitral decision? For the following reasons, we conclude that the parties must file their application for confirmation, vacation, or modification of the arbitral award in the original Superior Court litigation and may not commence a separate action for those purposes.

*Background.* In May of 2005, the plaintiff, Joseph Cybulski, and the defendant, Andrea Vaiani, were involved in a minor rear-end automobile collision. Vaiani's car struck Cybulski's at low speed while he was stopped at a traffic light. Cybulski claimed neck, back, and shoulder injuries. Vaiani (through her insurer) did not dispute fault, but denied causation of the claimed injuries in light of Cybulski's long history of similar pre-existing injuries and his questionable credibility.

In May of 2007, Cybulski filed an action for negligence in Superior Court in Middlesex County. After completion of pleadings and some preliminary motions practice, the parties drafted and executed an arbitration agreement "to fully settle all claims."[1] Under the agreement, they would continue to conduct discovery in accordance with the rules of civil procedure applicable in the Superior Court, in apparent preparation for the arbitration hearing. Cybulski covenanted to dismiss the Superior Court action, but never did so.

The parties agreed upon an arbitrator, set a hearing date of no later than February 13, 2008, and submitted to the Superior Court a joint motion to continue any pending activity until February 22, 2008. On January 16, 2008, a Superior Court judge allowed the continuance.

The arbitrator conducted a hearing at his office in Bristol County on February 7, 2008, and by a detailed decision of February 20 found no causal connection between the parties' accident and Cybulski's claimed injuries. He entered a defendant's award for Vaiani. Under the Superior Court's Rule 9A for motion practice, Vaiani served Cybulski with a motion to confirm the award.[2] In response, Cybulski filed simultaneously both an opposition to confirmation in Superior Court in Middlesex County and an application to vacate the award in Superior Court in Bristol County.

---

[1] Counsel for the parties signed, but did not date, the arbitration agreement. From events listed in the Superior Court docket sheet, we infer that the parties formed the agreement in late 2007.

[2] Under Superior Court Rule 9A(b), a party submitting a motion must first serve the motion and related materials upon its opponent, allow effectively thirteen days for receipt of responsive material, and then file the combined materials with the court. The Arbitration Act, G. L. c. 251, § 17, provides that any "application" to a court functions as a "motion" under the usual rules of the court.

A judge in the original Middlesex action promptly allowed the application (motion) for confirmation, denied the opposition, and entered a conforming final judgment in favor of Vaiani. No reported action has occurred in Superior Court in Bristol County upon Cybulski's application to vacate. He has brought a timely appeal from the Middlesex judgment.

*Discussion.* In his opposition to confirmation and now on appeal, Cybulski has contended that his application to vacate filed in Bristol County precluded any action upon Vaiani's application to confirm in Middlesex County because the venue provision of the Arbitration Act, G. L. c. 251, § 17, directs an "initial application . . . to the superior court for the county" in which the arbitration hearing occurred and "[a]ll subsequent applications . . . to the court hearing the initial application unless the court otherwise directs."[3] The Middlesex judge implicitly rejected that argument by his summary confirmation of the arbitral decision. With the same record as the judge, we review the decision to confirm de novo. See *Feeney* v. *Dell Inc.*, 454 Mass. 192, 199 (2009), and cases cited. For multiple reasons of statutory interpretation and practical policy, the judge's decision was sound as a matter of law and as an exercise of discretion.

1. *Statutory construction.* No provision of the Arbitration Act specifically addresses the situation in which parties without a prior arbitration agreement (a) begin a lawsuit, (b) make an arbitration agreement during its progress, (c) leave the lawsuit open as they arbitrate, and (d) then dispute the propriety of judicial review of the arbitral award by the original court instead of a subsequent one. The specific silence of the Arbitration Act does not pose an insuperable problem. Substantial guidance is available from the premises of the Arbitration Act generally and from the suggestive purposes of certain provisions of the Act particularly.

The purpose of the Uniform Arbitration Act, adopted by the Legislature in 1960 as G. L. c. 251,[4] is "to further the speedy,

---

[3]The thrust of Vaiani's appellate argument is that Cybulski originally chose Superior Court in Middlesex County as the venue for his suit, left that action open during arbitration, and should now face barriers of waiver and estoppel against the commencement of a second action upon the same dispute in a different county.

[4]By St. 1960, c. 374, § 1.

efficient, and uncomplicated resolution of . . . disputes with very limited judicial intervention or participation." *Marino* v. *Tagaris*, 395 Mass. 397, 400 (1985), quoting from *Floors, Inc.* v. *B.G. Danis of New England, Inc.*, 380 Mass. 91, 96 (1980). The Arbitration Act "express[es] a strong public policy favoring arbitration as an expeditious alternative to litigation for settling . . . disputes." *Home Gas Corp. of Mass., Inc.* v. *Walter's of Hadley, Inc.*, 403 Mass. 772, 774 (1989), quoting from *Danvers* v. *Wexler Constr. Co.*, 12 Mass. App. Ct. 160, 163 (1981). Consequently, once undertaken by the parties, the arbitration process contemplated by c. 251 should "be speedy and not subject to delay and obstruction in the courts." *Quirk* v. *Data Terminal Sys., Inc.*, 379 Mass. 762, 767 (1980). See *Lawrence* v. *Falzarano*, 380 Mass. 18, 28 (1980).[5] To solve specific questions of legislative purpose or preference, a court will examine a statutory scheme in all its parts as an integrated unit. See *Boston Police Patrolmen's Assn., Inc.* v. *Police Dept. of Boston*, 446 Mass. 46, 50 (2006); *Boston* v. *Rochalska*, 72 Mass. App. Ct. 236, 243 (2008).

The provision of the Arbitration Act most closely approaching the present situation is G. L. c. 251, § 2(*c*):

> "If an issue referable to arbitration under [a pre-existing arbitration agreement] is involved in an action or proceeding pending in a court having jurisdiction to hear applications under paragraph (a) [directing applications to the Superior Court], the application [to compel arbitration] *shall be made therein . . . .*"

The language presumes a pre-existing arbitration agreement between parties and a claim for arbitration by one or more of them. It assigns the determination of arbitrability to the Superior Court hosting the existing litigation. At least two factors support that directive. First, the parties are already engaged in that court and should not have to undertake an additional action. Second, that court's familiarity with the existing action should assist its decision of arbitrability.

---

[5]For commentary elaborating upon these benefits of arbitration, see Finn & McCarthy, Mediation and Arbitration § 9.5 (2008); Herzog, Commercial Arbitration: A Tool for the Lawyer, 4 Boston Bar J. No. 1, 7, 10 (1960); Asher, Commercial Arbitration in Massachusetts, 10 Boston Bar J. No. 9, 15, 17 (1966).

The same factors support the return of the arbitration outcome to the same Superior Court action after arbitration. The parties are already engaged in the still-open case. Their dispute will have created a record accessible and informative, and perhaps already familiar, to judges in the session. The mandatory retention of judicial review of the arbitral decision in the existing lawsuit would extend the policy of G. L. c. 21, § 2(*c*), to the present less common scenario in which the parties do not have a pre-existing arbitration agreement but rather make one in the course of the litigation.

The venue provision of the Arbitration Act, G. L. c. 251, § 17, lends support to this conclusion. As recounted above, it directs an "initial application" for judicial review of the arbitral result to the Superior Court of the county in which the arbitration occurred or in the county of the residence or the business location of the adverse party, and assigns "all subsequent applications" to the same court *"unless the court otherwise directs"* (emphasis supplied). This reservation of discretion to the Superior Court upon the matter of the venue of judicial review permits the judges to assign a postarbitration application to an appropriate court for such reasons as the convenience of the parties, the efficiency of the courts, prior judicial familiarity with the merits, and a possible connection of the arbitral outcome to other pending litigation. In the situation of an action between the parties in a first court, predating the arbitration, generating the reference to arbitration, and remaining open after the arbitration, a second court would typically weigh the advantages of efficiency and continuity anchoring the dispute in the original court, and often transfer the parties' application there, as authorized by the final phrase of § 17.

2. *Practical considerations.* Independently of the inferences available from the text of the Arbitration Act, mandatory return to the originating Superior Court action serves the paramount practical purposes of arbitration: speed, efficiency, simplicity, and limited judicial involvement. As the procedural history of this dispute demonstrates, the party losing the arbitration sought to open a second litigation front in a Superior Court session in another county. That development will typically require some response by the opposing party in both the new action and the original one.[6] At the very least, the second action imposes

---

[6]Even a successful motion to dismiss the second action will consume the

redundant work on the opposing party and unnecessary work on the second court. If the parallel actions continue, they extend those burdens and create the risk of differing outcomes. Retention by the original court reduces forum shopping, duplicative litigation, and the risk of inconsistent results. The statutory objective is to minimize litigation, not to multiply it.[7]

Finally, if valid reasons cause parties to propose judicial review of the arbitral result by a different court and action, they may address that proposal in the first instance to the original court. That route will bring the progress of the case to the neutral management of a judge, rather than leave it to the adversary strategies of the parties. The judge will be well positioned to assess the merits of a transfer of the case to an alternate court and to serve the goals of fairness and expedition.[8]

*Conclusion.* For these reasons the Superior Court in Middlesex County correctly retained judicial review of the arbitral result and confirmed[9] the award in favor of the defendant.

*Judgment affirmed.*

time and effort invested in the preparation of court papers, the conduct of a hearing, and the rendition of a reasoned decision — all often unnecessary.

[7]In a common scenario, as trial approaches in the Superior Court, all counsel may report their spontaneous agreement to submit the case to binding arbitration but will not request the judge to dismiss the action. The open action then serves as the natural forum for postarbitration applications.

[8]Ideally, as the concurring opinion proposes, the Legislature might prescribe a solution. However, legislative attention to a procedural detail of a general statutory scheme is unpredictable. Meanwhile a question of the present kind — the propriety of two open actions upon one dispute — might continue indefinitely. Plugging the procedural gaps in broadly worded statutes employs the core competence and responsibility of the judiciary. In the absence of legislative directions, it should know best how to arrange the pathways to and through its court rooms. See, as only several examples, *Kennedy* v. *Justice of the Dist. Ct. of Dukes County,* 356 Mass. 367, 377-378 (1969) (furnishing a procedural code for the conduct of statutory inquests); *Nei* v. *Burley,* 388 Mass. 307, 315 (1983) (concluding, amid legislative silence, that G. L. c. 93A claims are not entitled to trial by jury); and *Commonwealth* v. *Ciampa,* 51 Mass. App. Ct. 459, 463-464 (2001) (itemizing the elements of a record necessary to establish a judge's statutorily required warning of the immigration consequences of a guilty plea). By that process, the appellate courts furnish trial judges with guidance as well as hindsight.

[9]The plaintiff has pressed this appeal entirely upon arguments of venue and not upon any merits-related grounds authorized for vacation or modification by G. L. c. 251, § 12(*a*) and § 13(*a*), respectively.

GREEN, J. (concurring). I agree with the result reached by the majority opinion, affirming the judgment of the Superior Court confirming the arbitral award. Under the reasoning of *Abraham-Copley Square Ltd. Partnership* v. *Badaoui*, 72 Mass. App. Ct. 339 (2008), it is clear that (contrary to the plaintiff's argument) venue was proper in the Superior Court in Middlesex County.

I decline, however, to join the broader rule imposed by the majority opinion: that a motion to confirm an arbitral award in the circumstances of this case may only be brought in the Superior Court in Middlesex County.

As the majority correctly observe, no statute or common law confers exclusive jurisdiction or venue on the Superior Court of the county in which the action underlying a matter submitted to arbitration is pending, unless the agreement to arbitrate preceded commencement of the action. The majority further observe that, in confirming the award, the motion judge implicitly rejected the plaintiff's contention that venue was improper in Middlesex County. Having concluded that venue was at least permissible in Middlesex County, and that the motion judge accordingly acted properly in confirming the arbitral award, we need go no further to affirm the judgment.

Were the law clear that venue is vested exclusively in the county in which the underlying action commenced, I would have little hesitancy in including, as dictum, a statement to that effect. However, the majority opinion elects to impose a rigid rule of exclusive venue, based on a series of factors it considers persuasive. I am not persuaded that a rule restricting venue to a particular county of the Superior Court is necessary or advisable. What is offensive about the plaintiff's attempt in the present case is his effort to derail the defendant's properly initiated motion to confirm the award. Had the defendant instead sought to confirm the award in the Superior Court in Bristol County, I am not persuaded that any troublesome burden on judicial resources would have resulted. Moreover, I consider the majority's reliance on the presumed familiarity of Superior Court judges in Middlesex County with the underlying litigation to be overstated. First, by reason of the rotation system employed by the Superior Court department, there is no assurance that any judge assigned to that session at the time of the motion for confirmation would have had any prior

involvement with the underlying action.[1] Second, the matter had not progressed to any significant degree before the parties elected to pursue arbitration.[2] More significantly, the scope of the court's review of an arbitral award, on a motion to confirm, requires little prior familiarity with the underlying litigation.

In my view, there seems no compelling reason for a rule restricting venue for motions to confirm an arbitral award to the county in which the underlying action was initially commenced; I would instead tend to prefer a presumptive rule of flexibility for parties seeking confirmation of an arbitral award. Whatever prudential considerations might weigh in the direction of the rule advocated by the majority are, in my view, better left to the Legislature. Failing action by the Legislature, we may have occasion in some future case, where the issue is necessary to decision, to consider an appropriate rule. In any event, we need not reach the question in the present case, and I accordingly decline to do so.

---

[1] The docket of the Superior Court action, for example, reveals that the judge who confirmed the arbitral award had no prior involvement with the case, other than to allow a joint motion to continue a minor discovery motion.

[2] The parties agreed to arbitrate after the entry of default against the defendant, and the defendant's unsuccessful motion to remove the default (based on improper service).